**F10.01 Ⅎ 2 Form Complaint Provided by Prison System to Prisoner Under 42 U.S.C. ⌐ 1983 1**
**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL**
**RIGHTS ACT,**
**42 U.S.C. ⌐ 1983**

(
(
(
(

**In the United States**

**District Court**

**For New Mexico**

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN - 8 2020

MITCHELL R. ELFERS
CLERK /mn

20cv554 KWR/k

**David Greathouse**

**v.**

**Cibola County Corrections Center.**
**Wardon Luis  Rosa,  Assistant Wardon John Jackson, Chief Of Security Morris Hayes, , Captian**
**Jonathan Lierle, & Lieutenant Dominic Chavez Don Douglas**
................

**I.-- Previous Lawsuits**

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this
action or otherwise relating to your imprisonment? No NOT That I can
Remember

**II.-- Parties**

A. Name of Plaintiff David Greathouse
Address Cibola County Corrections Center 2000 cibola loop Milan New Mexico 97021
unit 700 c-pod

B. Defendant Luis Rosa is employed as Wardon at Cibola County Corrections Center. In contract with
CoreCivic

C. Additional Defendants, , Assistant Wardon John Jackson, Chief Of Security Morris Hayes, Captian Jonathan Lierle, & Lieutenant Dominic Chavez

## IV.-- Statement of Claim
### a violation of
1. Fourteenth Amendment  the right to access the courts
   2.  Fourteenth Amendment due process
3. The Fifth Amendment due process

4.  violation of eighth Amendment

**for the record** The reson the grievances attached were initially stated against "wardon ross is for the fact that c/o hicks misinformed me of the correct name of the wardon of whome I later discovered to be named wardon Rosa

The facts as relevant have been fully set forth in the accompanying affidavit of this complaint. On or about February 15 2020 at approximately 2100 hrs allegedly a physical altercation between two of Cibola County Corrections Center Detention officer's & two US Marshall detatainees took place in the corridor area of Cibola County Corrections Center's 700 unit. After the initial commencement of the altercation approximatly 4-5 detatainees were allegedly involved in the altercation. Approximatly 30 minutes after the altercation all inmates allegedly involved in the altercation were extracted from 700 unit c- pod by Cibola County Corrections Center Cert Team after immediately and rapidly identifying ali alleged threats to facility, secruity, staff and inmates the facility was placed on a procedural emergency lockdown. After what seemed to be about a hour the lock down was lifted for all units except 700 unit c- pod of which I **(Plaintiff David Greathouse)** was housed at the time of the incident and am currently still housed. All of 700 unit c-pod was kept on locked down for approximatly four or five days and striped of all privilieges even those protected by Federal, State, & US Constitutional law in light of and in retaliation of  the above mentioned incident/altercation. That I and all other remainig detatainees in 700 c-pod were completely neutral  and detached from.

Also my self and all detainees at **Cibola County Corrections Center** Are being exposed to a imminent potential life threating situation at **Cibola County Corrections Center** due to the fact that maintenance of the building is unkept and a sliding foundation of the building and the building being in violation of state federal ,A.C.A, & CCA safety standards and fire code law policy and regulations resulting in extreme cracking and deterioration of walls and ceillings createing a vary dangerous imminent potential life threating cave in situation for detainee's as well as staff and visitors.

My **(Plaintiffs)** due process rights and right to access the courts were violated in light of the altercation in the unit 700 C-pod corridor mentioned above and in retaliation of the altercation/incident in the manner of :

A)  I was subjected to punishment of no recreation being confined to my cell for periods exceeding 24 hours with out  procedural due process in retaliation of the above named incident in  700 C- pod corridor

B)  I was striped of telephone privilieges even those protected by law (ie attorney client phone calls)  in retaliation of the above named incident in light of numerous written and verbal request to Cibola County Corrections Center Detention officer's to utilize a telephone to make a legal phone call to my court appointed counsel Doug Couleur February 17th  as he instructed me to do so  on or about February 14th also in light of  numerous written and verbal request to Cibola County Corrections Center Detention officer's to utilize a telephone to make a legal phone call to my court appointed counsel Doug Couleur February 17th I was informed by Lt Salincio February 20th 2020 at approx 1330 hrs the chief whater instructed her to tell all detainees in 700 unit c-pod we are to remain lockdown and cannot make legal calls or access law library per

wardon Rosa and Chief of Security Hayes. Salincio stated she knows its a violation of my rights and their doing it to punish us and to file paper work (ie grievance, lawsuit) on them meaning her superior's. Salincio stated she was not provided with memorandum or any other documentation in connection to this entire situation

C) My right to access the courts was violated in retaliation of the above named incident by Wardon Rosa, Assistant Wardon Sedwick, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, ~~Chris Weier~~ DMG, Captian Jonathan Lierle, & Lieutenant Dominic Chavez. For five days after the emergency lockdown I requested to utilize the detainee law library and was told by C/O Hicks that chief of security Hayes and Wardon Rosa instructed him to notify me that per their orders I cannot access law library intill the pod was off lockdown in light of numerous written and verbal request to Cibola County Corrections Center Detention officer's to do so

I (**Plaintiff David Greathouse**) personally Showed chief ~~Weier~~ Woodcock and Lt Salincio law out of the Georgetown law journal and the US Constitution that said prisoner's right of access to courts may not be denied or obstructed and

Prison libraries are an essential ingredient in providing inmates constitutionally adequate access to the courts.

yet they still proceeded to violate my right of access and due process

D) Additional violation of due process and violation of eighth Amendment violated by Cibola County Corrections Center.

Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are as follows

1 by not reporting the number of confirmed covid 19 cases that have ~~are~~ DMG pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthmadiagnosis and condition.)**

**and all detainee's at** Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of March 11th, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 79,935 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide.** Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights. Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convicted of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the

**community at large. All of which has been habitualy violated by** Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,
**My curent conditionsof confinement at  Cibola County Corrections Center place me at great risk for COVID 19.**
conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by
Don Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at  Cibola County Corrections Center to imminant danger and crul and unusual punishment and violateing mine and all detainee's eighth amendment rights .
 Also According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn statement to the court and under penalty of  purjury, in frank sanville, Docket No. 2630-318 Wrcr (Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease containment strategy. Beyond the known detrimental mental health effectsof solitary confinement,isolation of people who are ill in solitary confinement results in decresed medical attention and increased risk of death.isolation of people who are ill using solitary confinement is also ineffective way to prevent transmission of the virus through droplets to others because ,except in specialized pressure rooms (rarely in medical units if aviaiable at all), air continues to flow outward from rooms to the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure rooms it is not equiped with enough of them to handle a outbreak and surge of the novel coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting, the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the rest of the facility and staff which further violates my 8th amendment.



**Respectfully**
At this point I would like to remind the court


**After Lewis, the prisoner must show that the officials actually prevented him or her from taking some meritorious legal action. However, the door to the courthouse remains open. A district court decision holding that this standard does not apply to retaliation cases was vacated. In the Sixth Circuit, in order to support a civil rights action based on a claim that prison officials retaliated against the filing of a lawsuit by interfering with a prisoner ⌿ s access to the courts, the prisoner does not have to show any injury beyond that which results from the retaliation. The Sixth Circuit stated that it is well established that prisoners have a constitutional right of access to the courts. This is not a generalized Ɛ right to litigate Ⴎ but a carefully bounded right, as Justice Scalia makes clear in Lewis:**
also
**In Knell v. Bensinger the Wood standard was again applied to prison officials. In discussing Wood ⌿ s two-pronged test for qualified immunity, the court defined the subjective good-faith requirement as whether, in enforcing a challenged regulation against the plaintiff, the defendant Ɛ sincerely and with a belief that he was doing right Ⴎ carried out the regulation. In defining the**

objective good faith requirement, the court stated that the prison official would not be immune if he acted ₮ with such disregard of the plaintiff ⫻ s clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.⫻
and

Bad faith will remove an immunity defense. Examples of bad faith include Williams v. Treen and Bennett v. Williams. In Williams v. Treen, where state prison officials violated clearly established state law, their belief in the lawfulness of their actions was per se unreasonable. They were not entitled to claim immunity based upon the defense of good faith. In other words, a good faith immunity from liability in a civil rights action cannot be asserted by officials whose actions clearly violate established state law. In this case, applicable state fire, safety, and health regulations were violated. State officials are charged with knowledge of their state ⫻ s own explicit and clearly established regulations.
Also

The defense of qualified immunity is available as long as the official ⫻ s actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This standard permits an official to carry out his or her duties free from concern for his or her personal liability. On the other hand, he or she may on occasion have to consider whether a proposed course of action can be squared with the Constitution and laws of the United States. Where an official could be expected to know that his or her conduct would violate statutory or constitutional rights, he or she should hesitate.
And

Some states hire private firms to run jails and prisons. However, according to the Supreme Court, prison guards employed by private firms are not entitled to qualified immunity from suit by prisoners charging a ₵ 1983 violation. While government-employed prison guards may have enjoyed an immunity defense arising out of their status as public employees at common law, correctional functions have never been exclusively public. In the nineteenth century, both private entities and government carried on prison management activities. The Court found no conclusive evidence of a historical tradition of immunity for private parties carrying out these functions.
And also see UNITED STATES VS ERIC BELDING  NO 20-CR-267 JAP


**ATTACHED TO AND INCORPORATED IN THIS  COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. ₵ 1983 is A NOTARIZED STATEMENT/ AFFIDAVIT AND GREIVANCE'S PERTAINING TO AND IN SUPPORT OF THIS  COMPLAINT**


....................
....................
V.-- Relief Requested

a judicial examination of the treatment of detainees and  totality of internal conditions at Cibola County Corrections Center. And release of all detainee's at  high risk of contracting coronavirus /COVID 19  to house arrest

Signed _David Greathouse_ [date] _____

Signature of Plaintiff _David G_ _____

I declare under penalty of perjury that the foregoing is true and correct.

[Date] _____ Signature of Plaintiff _David G_ _____

## NOTARIZED STATEMENT/ AFFIDAVIT IN SUPPORT OF COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. ℂ 1983

### I,David Greathouse being duly sworn, depose and say:

#### 1. I am a plaintiff in the above-entitled action.

##### 2. I make this affidavit in support of
David Greathouse
v.
Cibola County Corrections Center.
Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Hayes, , Captian Jonathan Lierle, & Lieutenant Dominic Chavez

3.Approximately on and  between the dates of February 15th  2020 through February 20th 2020. I (David Greathouse) a federal detainee at Cibola County Corrections Center housed in 700 unit C-pod along with approximately 35 to 40 other federal detainees was and still am subjected to unconstitutional and dangerous and potential life threating conditions and unconstitutional treatment by Cibola County Corrections Center and Corecivic chain of command, Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,  Captian Jonathan Lierle, & Lieutenant Dominic Chavez.
At Address
2000 cibola loop Milan New Mexico 97021
The reson the grievances attached were initially stated against "wardon ross is for the fact that c/o hicks misinformed me of the correct name of the wardon of whome I later discovered to be named wardon Rosa

I (David Greathouse) am aware that
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

I (David Greathouse) being duly sworn, depose and say: I have been punished with out due process by Cibola County Corrections Center and Corecivic chain of command, Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, Captian Jonathan Lierle, & Lieutenant Dominic Chavez. I (David Greathouse) was keept on locked down for approximatly five days and striped of all privilieges even those protected by Federal, State, & US Constitutional law in light of and in retaliation of the mentioned incident/altercation in the above-entitled action. And maintain That I and all other detatainees in 700 c-pod that were not extracted by Cibola County Corrections Center cert team were completely neutral and detached from The mentioned incident/altercation in the above-entitled action.

Also my self and all detainees at **Cibola County Corrections Center** Are being exposed to a imminent life threating situation at **Cibola County Corrections Center** due to the fact that maintenance of the building is unkept and a sliding foundation of the building and the building being in violation of state federal ,A.C.A, & CCA safety standards and fire code law policy and regulations resulting in extreme cracking and deterioration of walls and ceillings createing a vary dangerous imminent & potential life threating ( potential caving in situation) for detainee's as well as staff and visitors.

I (David Greathouse) being duly sworn, depose and say:
I was subjected to punishment of no recreation being confined to my cell for periods exceeding 24 hours with out procedural due process in retaliation of the above named incident
I was striped of all telephone privilieges even those protected by law (ie attorney client phone calls) in retaliation of the above named incident in light of numerous written and verbal request to Cibola County Corrections Center Detention officer's to utilize a telephone to make a legal phone call to my court appointed counsel Doug Couleur February 17th as he instructed me to do so on or about February 14th also in light of numerous written and verbal request to Cibola County Corrections Center Detention officer's to utilize a telephone to make a legal phone call to my court appointed counsel Doug Couleur February 17th I was informed by Lt Salincio February 20th 2020 at approx 1330 hrs the chief whater instructed her to tell all detainees in 700 unit c-pod we are to remain lockdown and cannot make legal calls or access law library per wardon Rosa and Chief of Security Hayes. Salincio stated she knows its a violation of my rights and their doing it to punish us and to file paper work (ie grievance, lawsuit) on them meaning her superior's. Salincio stated she was not provided with memorandum or any other documentation in connection to this entire situation
My right to access the courts was violated in retaliation of the above named incident by Wardon Rosa, Assistant Wardon Sedwick, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, Chief Whater, Captian Jonathan Lierle, & Lieutenant Dominic Chavez. For five days after the emergency lockdown I requested to utilize the detainee law library and was told by C/O Hicks that chief of security Hayes and Wardon Rosa instructed him to notify me that per their orders I cannot access law library intill the pod was off lockdown in light of numerous written and verbal request to Cibola County Corrections Center Detention officer's to do so
I (**Plaintiff David Greathouse**) personally Showed chief Whater and Lt Salincio law out of the

Georgetown law journal and the US Constitution that said prisoner's right of access to courts may not be denied or obstructed and

Prison libraries are an essential ingredient in providing inmates constitutionally adequate access to the courts.

yet they still proceeded to violate my right of access and due process as well as other detainees with this lockdown.

E) Also for the record grievance investigator (jaramillio) at Cibola County Corrections Center intetntionally

altered my grievance see attached grievance marked exhibit A section titled GRIEVANCE CATEGORY and last sentence grievance statement beginning with the word access. jaramillio did in fact or should have in fact known that altering and forging anything on a inmate grievance is agenst the law and policy.

F) I David Greathouse submitted four different grievances for separate rights violation that occurred consecutively to each other on different dates and times in other words for the same right being violated multiple different times and dates yet grievance investigator (jaramillio) took it upon her own discretion to merg all four grievances togather with ligitmate reason in light of the four grievances addressing separate individual consecutive violation claims of the same rights that occurred on different dates and times as grievance investigator jaramillio did in fact or should have in fact known that all violations were separate violations and should not have been merged.

G) Additional violation of due process and violation of eighth Amendment violated by Cibola County Corrections Center.

Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthmadiagnosis and condition.)**

**and all detainee's at Cibola County Corrections Center.** Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

H) **3 As of March 11th, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 79,935 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide**

I) Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center.mr Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John</u>

Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment  and situation while acting under color and code of state and federal law and thus  violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until  convected of the crime being detained for.

J)  The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large.

K)  My curent conditionsof confinement at  Cibola County Corrections Center place me at great risk for COVID 19.

L)  conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by

M)  Don Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at Cibola County Corrections Center to imminant danger and crul and unusual punishment  and violateing mine and all detainee's eighth amendment rights .


The above is true and accurate to the best of my knowledge.


Signature of Affiant _David Greathouse_  [Date] _May 14 2020_


**Plaintiff  David Greathouse**

Subscribed and sworn to before me
Signature of Notary Public _Stephanie Woodard_ [Date] _5/14/20_

[Expiration Date] _10/22/2023_

Notary Public _Stephanie Woodard_

OFFICIAL SEAL
Stephanie Woodard
NOTARY PUBLIC-State of New Mexico
My Commission Expires _10/22/2023_

City Of _Milan_       State of _New Mexico_

Grievance No.: 2020-504-00136-6 P.1
2002191

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | DAVID GREENHOUSE | |
|---|---|---|
| NUMBER: | 06216151 | HOUSING ASSIGNMENT: | 700 C |

INFORMAL RESOLUTION ATTACHED (Not required for an emergency grievance)?  ☐ YES  ☒ NO  USMS

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

STATE GRIEVANCE: (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

MY right to Access legal materials (law library) has been denied I.X. not having a week or over a week on my right to Access the court has been denied me and to mail any attorney my right to not to the threat of punishment without due process has been denied A tablet was sold no video phone calls (facetiming) could document and phones are broken right of a threat that took place my saftey I blank in the excise or Rec of UVU 700 pod the cell to saftey A 4 a 4 cells of UVU which were declared from the UVT so muster After the saftey of saftey has been declared etc This would be the threat because all inmates pods who the facility are not law library except for 700 C where the inmates lived but the law court not aware of which may stem that cern will concur the inmate injuries which has been taken in consideration And inmates not injured Are being subjected to A punishment which close or declaration of a un-saftey pod due may hurt legal or/us process and

Requested Action: (Attach additional pages if necessary)

(1) That this grievance be passed by a neutral signature source no recourse is pursuant to federal law/law (2) That ccc staff involved in this grievance is/be re-evaluated. re-trained properly in due constitutional right of prisoner so that these kind of things do not happen for a

(3) If ALL of these required actions cannot be met I request that this grievance be forwarded to the US Marshals

RECEIVED

FEB 19 2020

Inmate/Resident's Signature: David Greenhouse

Date Submitted: Feb 18 2020

Grievance Coordinator

Page 1 of 2

White Copy: To Greivance Officer – Yellow Copy: To Inmate/ Resident File – Pink Copy: To Inmate/Resident

03/07

2020·504-00136-6 p.1
2002191

And Denied Recreation, AT The Hands of warden R
Assistant warden Sedwick & Jackson & Chief of securi
Haze And whater All of whome Are Awar
That These Actions/conduct Violate Clearly establishe
STATUTORY or CONSTITUTIONAl Rights of which a
Resonable Person would have KNOWN.
Also in Sight of the Position's held By
These Individuals they would or Should Have KN
That (ever Person who, under Color of any statute
Ordinance, Regulation, Custom or Usage of Any
State of Territory, subjects, or Causes to Be
Subjected, Any Citizen of the United States or oth
Person within the Jurisdiction Thereof to the
deprivation of Any Right's Privileges or Immun
secured By The Constitution and laws, shall Be Liab
To the Party Injured in an Action At Law, suit i
equity, or other Proper Proceedings for Redres
ParPurased from Chpt 13.8 of the CONSTITUTIONAl
Rights of Prisoners, NiNth Edition, Part 1
CONSTITUTiONAl Right's of Prisoner's

RECEIVED

FEB 19 2020

Grievance Coordinator

Grievance No.: _2020-577 00136-6 P.2_
_2002191_

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | David Greathouse | |
|---|---|---|
| NUMBER: | 886216151 | HOUSING ASSIGNMENT: 700 C |

INFORMAL RESOLUTION ATTACHED (Not required for an emergency grievance)?  ☐ YES  ☒ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

(1) Antisue Alimony state denial for denial of the right of
Access To courts for Abusing Misconduct by prison officials. See
Crawford-El V. Britton 523 US 574 SEC - 811 (1998)
(2) US Constitutional Federal Law protects Inmates Legal calls & Law
Library As a Right of Access To courts See also Johnson V Avery
393 US 483 (1969) (Inmates right of Access To courts may Not
Be Denied or Obstructed)
(3) On Feb 17 2020 I Repeately Ask for Law Library And To call
my Attorney (Drug counsel) As He Instructed Me To call his
on The Above mentioned Date I was Denied both
Requests By unit staff whom were operating under order of
LT Salinas who was operating under order of Assistant Warden
Sedwick & Warden Ross
On Feb 14 I potentially Requested TO unit staff And Directly
TO Lt Salinas To call my Attorney & utilize The Inmate
Law Library AT cccc And Was Denied
The Reason for either action is Where A right is violated Judicial review

**Requested Action:** (Attach additional pages if necessary)

The Redress of my Requested Action is That
This Grievance Be forwarded To The "Marshalls"
for The Fact That All employees That will handle
This Grievance ARe The exact ones in is agenst
Which Create a legal conflict of interest And I Ask
for That if This Grievance is handled here at cccc
The Handler will exert Retaliation, intimidation, or coruption
And bad faith Toward me And The Grievance Process Process
I Ask The Reason for my Requested Action is
is a Nutial & Detached source and Determine The
out come & final Decision of This Grievance

RECEIVED

Inmate/Resident's Signature: __David Greathouse__          FEB 21 2020     Date Submitted: Feb 14 2020

Page 1 of 2                                                                        03/07
Grievance Coordinator

2020-504-0136-6 P. 2



KNOW The fact That where a official
could Be expected To KNOW That his or her
conduct would violate statutory or constitutional
Rights, he or she should hesitate

(4) ON FeB 19
I (DAVID GreatHouse) ASK The C/O in The
control Room of Unit 700C Throug my Room intercom
And later in person Through my cell Door
To make A legal call TO My court Appointed
Attorney And use The law libary Again
on the Intercom The c/o Told me
LT Chavez Told him I cannot make A legal
call or Use The law libary Becaus my Pod was
on lock Down when I ASK The c/o AT My Door
To make a legal call & Use The law libary
he Told me The law libary officer (Pacheco) officer
Does Not Bring The law libary in this Pod
I Informed The c/o who's name is C/O Lavoto
that Its my Right He said He knows And is
Trying To get us off LOCKDOWN & Trying To
Get The law libary

All These incidents Have mannifested Ultimately
from The Direct order's & Discression And Authority
of Waldon Ross.
Federal & State law states. IF The law was
clearly establised The Immunity of A government
official (such As wardons & other high exectitives) Fails
Since a Reasonably competent public official
Should KNOW The law Governing his Conduct.

Grievance Coordinator
RECEIVED FEB 21 2020

2020-504-00136-G   P 2 continued

ON ONE OCCASION OF FEB 17th 2020 C/O HICKS
Came To My Door And Told me That
Chief HAZE was PRESENT IN The UNit CONTROL ROOM
With Him & STATED " WHEN YOU ASK for The LAW
LiBary & ATTORNEY call Chief Haze was Right There
With me   He is The ONE who TOLD me What
TO SAY" Hicks THEN INSTRUCTED The clo IN CONTROL
ROOM to OPEN My Door TO Hand me My Tray
For LUNCH UPON The CELL Door OPENING I Showed
C/O Hicks The JOHNSON V. Avery Case RULING
OUT OF The GeorgeTown LAW JournaL Forty-Fifth
ANNUAL Review of criminal procedure 2016 Hicks Stated
I don't KNOW MAN Haze JUST TOLD me TO Tell YOU
There's NO ATTORNEY Calls or Law LiBary Right NOW"
also on one of several occasions OF SPEAKING With
MS Lt Salincio ON FEB 18 2020 I Showed her
JOHNSON V. Avery As well As 42 U.S.C § 1983 Section 1983
AND She STATED" ITS OUT OF MY hands I Already Let Them
KNOW YOU REQUESTED Legal Calls & Law LiBary ITS UP TO
WARDON ROSS Keep DOCUMENTING it MAN Thats All You can
DO"
This is The 3rd time Within 2 & 3/4th of a month
That I was DENIED These 2 Rights REPETIVLY FOR
MUTIPLE DAYS AT A Time BY SUPERIOR'S OF CORECIVIC CCCC.
That DID KNOW or Should Have KNOWN IN LIGHT OF The
Thier high POSISTIONS OF AUThority That They
Were Performing discretionary FUNCTIONS That
CONDUCT Violations OF Clearly established
STATUTORY or CONSTITUTIONAL Rights OF Which
a Reasonable PERSON WOULD HAVE KNOWN.
AND ALSO These officials Should of or DID

Grievance Coord.   RECEIVED FEB 21 20

Grievance No.: 2020-504-00136-6 P3
2102191

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | DAVID GREENHOUSE | |
|---|---|---|
| NUMBER: | 0621416151 | HOUSING ASSIGNMENT: |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☒ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| 1. Facility Staff | 8. Dental Services | 15. Housing |
|---|---|---|
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

WARDEN ROPP HAS VIOLATED MY RIGHT TO BE A GIV UP BY (1) INITIATING A FICTITIOUS MALICIOUS INSTITUTION ON MY SELF AND OTHER INMATES IN TOR C UNIT CIBOLA COUNTY CORRECTIONAL CENTER. INSIGHT OF AN ISOLATED INCIDENT WHILE 2 OF HIS STAFF MEMBERS PROVOKED INMATES INTO A PHYSICAL ALTERCATION BY EXERTING INTENTIONAL MISCONDUCT TOWARD THOSE INMATES. ALL OF THE INMATES INVOLVED IN THE ALTERCATION WERE EXTRACTED FROM THE POD TOR C AND PLACED IN SOLITARY CONFINEMENT. APPROX. 30 MINUTES AFTER THE INCIDENT HAVING UNIT COUPLED WITH A POP HAVING UNIT LOCK DOWN. AFTER PERCEIVING ALL PROBLEM INCIDENTS, INSTRUCTION OF THIS ELIMINATED. SOLVING ALL THREATS + INTERFERENCE TO SAID SECURITY INSIGHT WHILE OF THE INMATE TAKING PLACE OUTSIDE OF TOR C, QUIETING ELIMINATING ALL THREATS WITH THE HELP OF A WHISTLEBLOW CAMERA SYSTEM + STABILIZING POP SECURITY. ALL INMATES INCLUDING MYSELF (DAVID GREENHOUSE #0621416151) HAVE REMAINED CONFINED TO OUR POD AND STRIPPED OF ALL PRIVILEGES EVEN THOUGH PROTECTED BY THE U.S. CONSTITUTION (18) ACCESS TO THE COURTS + LEGAL WITH DUE PROCEDURAL DUE PROCESS. ALSO DUE STRAINED FAMILY TIES HAVING PHONE ACCESS OR COMMISSARY AND RECREATION AND

**Requested Action:** (Attach additional pages if necessary)

I HAVE CITED A VIOLATION OF FEDERAL OR STATE REGULATIONS, LAWS, COURT DECISION OR ADA OR CONSTITUTIONAL RIGHTS FOR THE FACT THAT AN INITIATED ACTION IS THAT THE GRIEVANCE BE CONSIDERED DIRECTLY TO THE U.S. MAGISTRATE + HANDED BY A NEUTRAL + DETACHED SOURCE. PURSUANT TO FOURTEENTH DUE PROCEDURAL DUE PROCESS + GRIEVANCE LAW. IN LIGHT OF THE SITUATION BEING DIRECTED TOWARD THE WARDEN OF THIS FACILITY TO PREVENT ADMINISTRATIVE RETALIATION TOWARDS MY SELF FROM CIBOLA COUNTY CORRECTIONAL CENTER SUPERVISORS. I WISH TO ALERT AND EXHAUST ALL MY INSTITUTIONAL REMEDY, IN CASE OF LEGAL RECEIVED

FEB 21 2020

Inmate/Resident's Signature: David Greenhouse   Date Submitted: FEB 19, 2020

Grievance Coordinator

03/07
**White Copy:** To Greivence Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

2020-507 00136 6 8

CONTENUE INMATE/RESIDENT GRIEVANCE
DAVID GREATHOUSE #0621651


LEGAL CALLS. WE ARE NOT GIVEN LEGAL CALL BY UNIT MANAGE
WE MUST US POD PHONE. BUT DENIAL OF OUR RIGHTS TO LEGAL
ACCESS — WE ARE IN LEGAL BATTLE AND IT REQUIRES ACCESS TO
ATTORNEY AND LEGAL AID.

RECEIVED

FEB 2 1 2020

Grievance Coordinator

Grievance No.:   2020-504-00136 -G                                                    14-5B

**RESPONDING STAFF M EMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

The lock down in the unit was from 2/15/20-2/19/20 (4days). 700C pod was allowed to use the phones on the 18th. You in fact made a phone call from your account on the 18th which lasted about 20 minutes. After talking to the visitation officer it was confirmed all visits did occur to include those for the lockdown units. Law library does occur, except when the unit poses a security issue and are on lock down. If your lawyer had called and set up a telephone call then you would be pulled out to talk to them. Your lawyer did not call your unit staff. It is up to the discretion of security to deem when the pod is safe and able to go back to normal operations, which was 2/19/20.

**RESPONDING STAFF MEMBER'S DECISION:** (Attach additional pages if necessary.  All pages must include the grievance number.)

Your rights were not violated

| | |
|---|---|
| Responding Staff Member's Printed Name: | Title: Investigator |
| Responding Staff Member's Signature: | Date: 02/26/2020 |
| Inmate/Resident's Signature (upon receipt): *Refused to sign* | Date: 2-27-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I would like to Appeal for The fact That All These Grievances were for seperate Violations And my Rights were violated Clearly According to Law 3 us Constitution 5th Amedment 3 14th Amedment

RECEIVED

FEB 28 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:** (Attach additional pages if necessary.  All pages must include the grievance number.)

Denied

Warden/Administrator's Signature: _____   Date: 2-29-2020
Inmate/Resident's Signature (upon receipt) _____   Date: _____

                                                                                    03/07

exhibit A pg

Grievance No.: 2020-504-00133-6
2002186

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | DAVID GreatHouse | | |
|---|---|---|---|
| NUMBER: | 0621615| | HOUSING ASSIGNMENT: | 700 C |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☒ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

(1) MY Right To Access legal maTerials violated BY Cibola county correctional center staff on FEB 17 2020
(2) MY Right To Due process violated BY Being Deprived of MY consTiTuTional Right To Access courts 3 legal maTerials wiThouT Due process
Legal Ground Are As follows JOHNSON V. AVERY 393 US 483, 485, 1969 (Prisoner's RighT of Access To courts MAY NOT Be Denied or obsTrucTed) The courts, federal 3 STATE Law Define The RighT of Prisoners To Access courT As follows Legal phone calls 3 mail corespondance HoP To prepare 3 File legal papers 3 Access To The law librarY I Have Been Denied MY RighT To Access BY Cibola CounTY correcTions center Chief of securiTY LuTRonTs sargeanTs 3 commander/warden For No Reason for over A week ApproximaTely. Access To Legal maTerial is A RighT OF INmates Provided BY The US consTiTution which is why This grievance caTegory is circled As R0 Above For The subsection entiTled ('Grievance caTegory?')

**Requested Action:** (Attach additional pages if necessary)

ThaT Law librarY 3 Access To Legal maTerials RighTs of INmates AT Cibola CounTY corrections center Be Adheared To pursuant To The US consTiTuTional RighTs Of Those whome Have NoT yeT Been convicTed of a crime As CCCC is JusT a Holding FaciliTy For USMS , AND CounTY Jail FoR Cibola CounTY

RECEIVED

FEB 18 2020

Inmate/Resident's Signature: David GreaTHose

Grievance Coordinator:
Date Submitted: FEB 17/2020

03/07

**White Copy:** To Greivence Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

eXhiBiT #1 Pg 2 of 2

Grievance No.:   2020-504-00133-G                                                    14-5E

**RESPONDING STAFF M EMBER'S REPORT: (Attach additional pages if necessary. All pages must include the grievance number.)**

On Feb 17, 2020 your rights were not violated. The facility was under lock down. The safety and security needs comes first. The mail correspondence continued to operate in a regular manner.  The law library is operable but not during lock downs unless being lock down for an extended period. Unit 700 was locked down until the 19th. Showers were provided able to make a phone call. In which you made a phone call on the 18th, in which you talked on for about 20 minutes.

**RESPONDING STAFF MEMBER'S DECISION: (Attach additional pages if necessary. All pages must include the grievance number.)**

Your rights were not violated

Responding Staff Member's Printed Name: _____       Title   Investigator

Responding Staff Member's Signature: _____       Date:   2/26/2020

Inmate/Resident's Signature (upon receipt): _____ Refused to sign ____   Date:   2-27-2020

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary. All pages must include the grievance number.)

MY Rights were infact violated And i wish TO Appeal

RECEIVED

FEB 28 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION: (Attach additional pages if necessary. All pages must include the grievance number.)**

Denied

Warden/Administrator's Signature: _____              Date: 2.25.2020

Inmate/Resident's Signature (upon receipt) _____        Date: _____

03/07

Grievance No.: 2020 5225-06304 G
2005,51

emergency grievance

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | DAVID GreatHouse | |
|---|---|---|
| NUMBER: | 06216151 | HOUSING ASSIGNMENT: 700-C Pod |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☒ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

WArden Luis Rosa And His Chaid of Command Has exposed Me To A Thrating Illness (CoronaVirus) by Allowing DetaiNees From a CountyBus/coud 19 infected Facility in otero county To Be Admitted into This facility (cibola county collection center And Has Also Abused himself Violate The Grivenor of NewMexico (LUJAN GrisHam) TwICe SafAty & SOCial DistaNcing order To Be updated Submissivly on a orderly DailyBasis THUS (See ATTachMeNTS for The coNtinuation of The coMplaiNT) →

**Requested Action:** (Attach additional pages if necessary)

See ATTachment FOR
~~Ref~~ Requested ACTioN / Relief

RECEIVED

MAY 15 2020

Inmate/Resident's Signature: DAVId GreatHouse          Date Submitted: MAY 2020

**White Copy:** To Greivence Officer – **Yellow Copy**: To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

03/07

# Grievance from
# David Greathouse

A)  Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are as follows.

1 by not reporting the number of confirmed covid 19 cases that have ~~not~~ pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)** and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as othe~~rs~~ in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239** have lost their lives due to this virus and **4,153,871 in the world have been infected resulting in 284,628 deaths world wide**

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Centers medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes,

My curent conditions of confinement at Cibola County Corrections Center place me at great risk for COVID 19.

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at Cibola County

RECEIVED

MAY 1 5 2020

Grievance Coordinator

**<u>Corrections Center to imminant danger and crul and unusual punishment
and violateing mine and all detainee's eighth amendment rights .</u>**
<u>Also</u>  3 inmates have passed through  <u>**Cibola County Corrections Center**</u> in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if aviailable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure
rooms it is not equiped with enough of them to handle a outbreak and surge of the novel
coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to
effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,
the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

**<u>Relief Requested</u>**
**That wardon Rosa forward this grievance to the US Marshall's and request
a judicial examination of the treatment of detainees and  totality of internal conditions at
Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 1 5 2020

## NOTARIZED STATEMENT/ AFFIDAVIT IN SUPPORT OF COMPLAINT

I, __**David Greathouse**_____ being duly sworn, depose and say:

### 2. I make this affidavit in support of the attached grievance against

**Cibola County Corrections Center.**
**Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Hayes, , Captian**
**Jonathan Lierle, & Lieutenant Dominic Chavez Don** <u>Douglas</u>

I (_____**David Greathouse**_____) a federal detainee at Cibola County Corrections
Center housed in 700 unit C-pod along with approximately 35 to 40 other federal detainees was and
still am subjected to unconstitutional and dangerous life threating conditions and unconstitutional
treatment by Cibola County Corrections Center and Corecivic chain of command, Wardon Luis Rosa,
Assistant Wardon John Jackson,Chief Of Security Morris Hayes, Captian Jonathan Lierle, &
Lieutenant Dominic Chavez.
At Address
2000 cibola loop Milan New Mexico 97021

I (_____**David Greathouse**_____) am aware that
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or
Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other
proper proceeding for redress.

I (_____**David Greathouse**_____) being duly sworn, depose and say: I have been
punished with out due process by Cibola County Corrections Center and Corecivic chain of command,
Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, Captian
Jonathan Lierle, & Lieutenant Dominic Chavez.

Also my self and all detainees at **Cibola County Corrections Center** Are being exposed to a imminent
life threating situation at **Cibola County Corrections Center** due to the fact that maintenance of the
building is unkept and a sliding foundation of the building and the building being in violation of state
federal ,A.C.A, & CCA  safety standards and fire code law policy and regulations resulting in extreme
cracking and deterioration of walls and ceillings createing a vary dangerous imminent & potential life
threating ( potential caving in situation) for detainee's as well as staff and visitors.

B) Additional violation of due process and violation of eighth Amendment violated by Cibola
County Corrections Center.
Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,
intentionally and deliberately while acting under the color of law  violateing governor Lujan
Grishim social distanceing order and public safety order's to keep all new mexicans safe the
action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris
Hayes,are as follows
1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola**

RECEIVED

MAY 1 5 2020

Grievance Coordinator

County Corrections Center to CDC and the proper government & medical agencies.
2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthmadiagnosis and condition.)
and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

C) 3 As of March 11th, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 79,935 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

D) Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorney Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center.mr Don Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment  and situation while acting under color and code of state and federal law and thus  violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until  convected of the crime being detained for.

E) The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large.

F) My curent conditionsof confinement at  Cibola County Corrections Center place me at great risk for COVID 19.

G) conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by

H) Don Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at Cibola County Corrections Center to imminant danger and crul and unusual punishment

I)  and violateing mine and all detainee's eighth amendment rights .

The above is true and accurate to the best of my knowledge.

Signature of Affiant _David Greathouse_   [Date] _May 14 2020_
**David Greathouse**
Subscribed and sworn to before me
Signature of Notary Public_Stephanie Woodard_[Date] _5/14/20_

[Expiration Date] _10/22/2023_

Notary Public _Stephanie Woodard_

City Of ___Milan___ State of _New Mexico_

OFFICIAL SEAL
Stephanie Woodard
NOTARY PUBLIC-State of New Mexico
My Commission Expires _10/22/2023_

RECEIVED

MAY 1 5 2020

Grievance Coordinator

## Declaration of Dr. Jaimie Meyer

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

## I.    Background and Qualifications

1.  I am Dr. Jaimie Meyer, an Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut. I am board certified in Internal Medicine, Infectious Diseases and Addiction Medicine.  I completed my residency in Internal Medicine at NY Presbyterian Hospital at Columbia, New York, in 2008. I completed a fellowship in clinical Infectious Diseases at Yale School of Medicine in 2011 and a fellowship in Interdisciplinary HIV Prevention at the Center for Interdisciplinary Research on AIDS in 2012. I hold a Master of Science in Biostatistics and Epidemiology from Yale School of Public Health.

2.  I have worked for over a decade on infectious diseases in the context of jails and prisons. From 2008-2016, I served as the Infectious Disease physician for York Correctional Institution in Niantic, Connecticut, which is the only state jail and prison for women in Connecticut.  In that capacity, I was responsible for the management of HIV, Hepatitis C, tuberculosis, and other infectious diseases in the facility.  Since then, I have maintained a dedicated HIV clinic in the community for patients returning home from prison and jail. For over a decade, I have been continuously funded by the NIH, industry, and foundations for clinical research on HIV prevention and treatment for people involved in the criminal justice system, including those incarcerated in closed settings (jails and prisons) and in the community under supervision (probation and parole).  I have served as an expert consultant on infectious diseases and women's health in jails and prisons for the UN Office on Drugs and Crimes, the Federal Bureau of Prisons, and others.  I also served as an expert health witness for the US Commission on Civil Rights Special Briefing on Women in Prison.

3.  I have written and published extensively on the topics of infectious diseases among people involved in the criminal justice system including book chapters and articles in leading peer-reviewed journals (including Lancet HIV, JAMA Internal Medicine, American Journal of Public Health, International Journal of Drug Policy) on issues of prevention, diagnosis, and management of HIV, Hepatitis C, and other infectious diseases among people involved in the criminal justice system.  In making the following statements, I am not commenting on the particular issues posed this case. Rather, I am making general statements about the realities of persons in detention facilities, jails and prisons.

4.  My C.V. includes a full list of my honors, experience, and publications, and it is attached as Exhibit A.

5.  I was paid $1,000 for my time drafting an earlier version of this report filed in another case. I subsequently prepared this version of the report without receiving payment for my services.

1

6. I testified as an expert at a single trial or by deposition in the past four years: *State v. Frank Sanville*, Docket No. 263-3-18 Wrcr (Vermont) on April 21, 2020.

## II.   Heightened Risk of Epidemics in Jails and Prisons

7. The risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected. There are several reasons this is the case, as delineated further below.

8. Globally, outbreaks of contagious diseases are all too common in closed detention settings and are more common than in the community at large. Prisons and jails are not isolated from communities. Staff, visitors, contractors, and vendors pass between communities and facilities and can bring infectious diseases into facilities. Moreover, rapid turnover of jail and prison populations means that people often cycle between facilities and communities. People often need to be transported to and from facilities to attend court and move between facilities. Prison health is public health.

9. Reduced prevention opportunities: Congregate settings such as jails and prisons allow for rapid spread of infectious diseases that are transmitted person to person, especially those passed by droplets through coughing and sneezing. When people must share dining halls, bathrooms, showers, and other common areas, the opportunities for transmission are greater. When infectious diseases are transmitted from person to person by droplets, the best initial strategy is to practice social distancing. When jailed or imprisoned, people have much less of an opportunity to protect themselves by social distancing than they would in the community. Spaces within jails and prisons are often also poorly ventilated, which promotes highly efficient spread of diseases through droplets. Placing someone in such a setting therefore dramatically reduces their ability to protect themselves from being exposed to and acquiring infectious diseases.

10. Disciplinary segregation or solitary confinement is not an effective disease containment strategy. Beyond the known detrimental mental health effects of solitary confinement, isolation of people who are ill in solitary confinement results in decreased medical attention and increased risk of death. Isolation of people who are ill using solitary confinement also is an ineffective way to prevent transmission of the virus through droplets to others because, except in specialized negative pressure rooms (rarely in medical units if available at all), air continues to flow outward from rooms to the rest of the facility. Risk of exposure is thus increased to other people in prison and staff.

11. Reduced prevention opportunities: During an infectious disease outbreak, people can protect themselves by washing hands. Jails and prisons do not provide adequate opportunities to exercise necessary hygiene measures, such as frequent handwashing or use of alcohol-based sanitizers when handwashing is unavailable. Jails and prisons are often under-resourced and ill-equipped with sufficient hand soap and alcohol-based sanitizers for people detained in and working in these settings. High-touch surfaces (doorknobs, light switches, etc.) should also be cleaned and disinfected regularly with bleach to prevent virus spread, but this is often not done in jails and prisons because of a

2

lack of cleaning supplies and lack of people available to perform necessary cleaning procedures.

12. <u>Reduced prevention opportunities:</u> During an infectious disease outbreak, a containment strategy requires people who are ill with symptoms to be isolated and that caregivers have access to personal protective equipment, including gloves, masks, gowns, and eye shields. Jails and prisons are often under-resourced and ill-equipped to provide sufficient personal protective equipment for people who are incarcerated and caregiving staff, increasing the risk for everyone in the facility of a widespread outbreak.

13. <u>Increased susceptibility:</u> People incarcerated in jails and prisons are more susceptible to acquiring and experiencing complications from infectious diseases than the population in the community.[1] This is because people in jails and prisons are more likely than people in the community to have chronic underlying health conditions, including diabetes, heart disease, chronic lung disease, chronic liver disease, and lower immune systems from HIV.

14. <u>Jails and prisons are often poorly equipped to diagnose and manage infectious disease outbreaks.</u> Some jails and prisons lack onsite medical facilities or 24-hour medical care. The medical facilities at jails and prisons are almost never sufficiently equipped to handle large outbreaks of infectious diseases. To prevent transmission of droplet-borne infectious diseases, people who are infected and ill need to be isolated in specialized airborne negative pressure rooms. Most jails and prisons have few negative pressure rooms if any, and these may be already in use by people with other conditions (including tuberculosis or influenza). Resources will become exhausted rapidly and any beds available will soon be at capacity. This makes both containing the illness and caring for those who have become infected much more difficult.

15. <u>Jails and prisons lack access to vital community resources to diagnose and manage infectious diseases.</u> Jails and prisons do not have access to community health resources that can be crucial in identifying and managing widespread outbreaks of infectious diseases. This includes access to testing equipment, laboratories, and medications.

16. <u>Jails and prisons often need to rely on outside facilities (hospitals, emergency departments) to provide intensive medical care</u> given that the level of care they can provide in the facility itself is typically relatively limited. During an epidemic, this will not be possible, as those outside facilities will likely be at or over capacity themselves.

17. <u>Health safety:</u> As an outbreak spreads through jails, prisons, and communities, medical personnel become sick and do not show up to work. Absenteeism means that facilities can become dangerously understaffed with healthcare providers. This increases a number of risks and can dramatically reduce the level of care provided. As health systems inside facilities are taxed, people with chronic underlying physical and mental health conditions and serious medical needs may not be able to receive the care they need for these

---

[1] *Active case finding for communicable diseases in prisons*, 391 The Lancet 2186 (2018), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(18)31251-0/fulltext.

conditions. As supply chains become disrupted during a global pandemic, the availability of medicines and food may be limited.

18. Safety and security: As an outbreak spreads through jails, prisons, and communities, correctional officers and other security personnel become sick and do not show up to work. Absenteeism poses substantial safety and security risk to both the people inside the facilities and the public.

19. These risks have all been borne out during past epidemics of influenza in jails and prisons. For example, in 2012, the CDC reported an outbreak of influenza in 2 facilities in Maine, resulting in two inmate deaths.[2] Subsequent CDC investigation of 995 inmates and 235 staff members across the 2 facilities discovered insufficient supplies of influenza vaccine and antiviral drugs for treatment of people who were ill and prophylaxis for people who were exposed. During the H1N1-strain flu outbreak in 2009 (known as the "swine flu"), jails and prisons experienced a disproportionately high number of cases.[3] Even facilities on "quarantine" continued to accept new intakes, rendering the quarantine incomplete. These scenarios occurred in the "best case" of influenza, a viral infection for which there was an effective and available vaccine and antiviral medications, unlike COVID-19, for which there is currently neither.

## III.  Profile of COVID-19 as an Infectious Disease[4]

20. The novel coronavirus, officially known as SARS-CoV-2, causes a disease known as COVID-19. The virus is thought to pass from person to person primarily through respiratory droplets (by coughing or sneezing) but may also survive on inanimate surfaces. People seem to be most able to transmit the virus to others when they are sickest but it is possible that people can transmit the virus before they start to show symptoms or for weeks after their symptoms resolve. In China, where COVID-19 originated, the average infected person passed the virus on to 2-3 other people; transmission occurred at a distance of 3-6 feet. Not only is the virus very efficient at being transmitted through droplets, everyone is at risk of infection because our immune systems have never been exposed to or developed protective responses against this virus. A vaccine is currently in development but will likely not be able for another year to the

---

[2] *Influenza Outbreaks at Two Correctional Facilities — Maine, March 2011*, Centers for Disease Control and Prevention (2012), https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6113a3.htm.

[3] David M. Reutter, *Swine Flu Widespread in Prisons and Jails, but Deaths are Few*, Prison Legal News (Feb. 15, 2010), https://www.prisonlegalnews.org/news/2010/feb/15/swine-flu-widespread-in-prisons-and-jails-but-deaths-are-few/.

[4] This whole section draws from Brooks J. Global Epidemiology and Prevention of COVID19, COVID-19 Symposium, Conference on Retroviruses and Opportunistic Infections (CROI), virtual (March 10, 2020); *Coronavirus (COVID-19)*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/index.html; Brent Gibson, *COVID-19 (Coronavirus): What You Need to Know in Corrections*, National Commission on Correctional Health Care (February 28, 2020), https://www.ncchc.org/blog/covid-19-coronavirus-what-you-need-to-know-in-corrections.

4

general public. Antiviral medications are currently in testing but not yet FDA-approved, so only available for compassionate use from the manufacturer. People in prison and jail will likely have even less access to these novel health strategies as they become available.

21. Most people (80%) who become infected with COVID-19 will develop a mild upper respiratory infection but emerging data from China suggests serious illness occurs in up to 16% of cases, including death.[5] Serious illness and death is most common among people with underlying chronic health conditions, like heart disease, lung disease, liver disease, and diabetes, and older age.[6] Death in COVID-19 infection is usually due to pneumonia and sepsis. The emergence of COVID-19 during influenza season means that people are also at risk from serious illness and death due to influenza, especially when they have not received the influenza vaccine or the pneumonia vaccine.

22. The care of people who are infected with COVID-19 depends on how seriously they are ill.[7] People with mild symptoms may not require hospitalization but may continue to be closely monitored at home. People with moderate symptoms may require hospitalization for supportive care, including intravenous fluids and supplemental oxygen. People with severe symptoms may require ventilation and intravenous antibiotics. Public health officials anticipate that hospital settings will likely be overwhelmed and beyond capacity to provide this type of intensive care as COVID-19 becomes more widespread in communities.

23. COVID-19 prevention strategies include containment and mitigation. Containment requires intensive hand washing practices, decontamination and aggressive cleaning of surfaces, and identifying and isolating people who are ill or who have had contact with people who are ill, including the use of personal protective equipment. Jails and prisons are totally under-resourced to meet the demand for any of these strategies. As infectious diseases spread in the community, public health demands mitigation strategies, which involves social distancing and closing other communal spaces (schools, workplaces, etc.) to protect those most vulnerable to disease. Jails and prisons are unable to adequately provide social distancing or meet mitigation recommendations as described above.

24. The time to act is now. Data from other settings demonstrate what happens when jails and prisons are unprepared for COVID-19. To date, few state or federal prison systems have adequate (or any) pandemic preparedness plans in place. Systems are just beginning to screen and isolate people on entry and perhaps place visitor restrictions, but this is wholly inadequate when staff and vendors can still come to work sick and

---

[5] *Coronavirus Disease 2019 (COVID-19): Situation Summary*, Centers for Disease Control and Prevention (March 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/summary.html.
[6] *Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study.* The Lancet (published online March 11, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext
[7] *Coronavirus Disease 2019 (COVID-19): Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease*, Centers for Disease Control and Prevention (March 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

5

potentially transmit the virus to others.

25. Systems are challenged to respond to COVID-19 guidelines that are modified on a near-daily basis. It may be impossible to adequately respond to the COVID-19 pandemic, while also respecting the rights and dignity of people who are incarcerated.

## IV.   Possible Risks of COVID-19 in Federal Bureau of Prisons Facilities in Danbury, Connecticut

26. From approximately 2017-2018, I volunteered to provide AIDS Awareness Programming for all women housed at the Camp and the Satellite Low (FSL) facilities at FCI Danbury. In doing so, I interacted with the resident inmates in common meetings areas on a monthly basis in groups as small as 10 and as large as 100. I have additionally toured all areas of the FSL facility in January 2018 with leadership from the National Association of Women Judges. I last entered the facilities in approximately Summer 2018.

27. The FSL facility is comprised of a single large dormitory style room, in which all of the women sleep on bunks. There is also a library, a laundry room, a group meeting area, and a space for exercise. In the adjoining building, there are multiple classrooms and meeting spaces. There was an infirmary staffed intermittently by a physician or nurse practitioner, who was available for sick call. For other medical needs, women were brought into the men's facility to see the healthcare provider by appointment. All serious medical needs and specialty visits were referred to the nearby Danbury Hospital. Per the BOP webpage, as of April 23, 2020, there were 165 women housed at FSL. The layout of the space would make it impossible for these women to practice social distancing.

28. When I last visited the Camp, it was comprised of a single floor of cells, each of which held 2-3 women. I understand that the building has since been reconfigured and the women are now housed in large dormitory style rooms. Per the BOP webpage, as of April 23, 2020, there were 153 women housed at the Camp. Dormitory style housing makes it impossible for prisoners to practice social distancing.

29. Per BOP reports, as of April 23, 2020, there are 15 inmates with confirmed COVID-19 infection, 32 staff members, and 1 death. These numbers do not include the number of inmates and staff who previously tested positive and have since recovered. For example, on April 15, a news article said that BOP reported 44 inmates and 39 staff infected at FCI Danbury. It is unclear in which compound the COVID+ inmates resided on the Danbury BOP campus. Given that all spaces in both women's facilities on the Danbury BOP campus are communal, there is high likelihood that if a single case entered the facility, many more will follow in what some have called a "tinderbox scenario." The large number of cases in FCI Danbury to date reflects widespread disease in the surrounding community and is evidence that FCI Danbury is unable to mitigate or contain the spread of disease.

30. During my visit to FSL in January 2018, I had the opportunity to meet with many of the women to discuss their experiences of confinement without any correctional officers present. The women I met with had significant medical issues, including serious

6

cardiovascular, neurologic, and psychiatric conditions. They described significant delays in receiving medical attention for issues both large and small. Any delays in access to care that already exist in normal circumstances will only become worse during an outbreak, making it especially difficult for the facilities to contain any infections and to treat those who are infected.

31. Failure to provide individuals with continuation of the treatment they were receiving in the community, or even just interruption of treatment, for chronic underlying health conditions will result in increased risk of morbidity and mortality related to these chronic conditions.

32. Failure to provide individuals adequate medical care for their underlying chronic health conditions results in increased risk of COVID-19 infection and increased risk of infection-related morbidity and mortality if they do become infected.

33. People with underlying chronic mental health conditions need adequate access to treatment for these conditions throughout their period of detention. Failure to provide adequate mental health care, as may happen when health systems in jails and prisons are taxed by COVID-19 outbreaks, may result in poor health outcomes. Moreover, mental health conditions may be exacerbated by the stress of incarceration during the COVID-19 pandemic, including isolation and lack of visitation.

34. Failure to keep accurate and sufficient medical records will make it more difficult for facilities to identify vulnerable individuals in order to both monitor their health and protect them from infection. Inadequate screening and testing procedures in facilities increase the widespread COVID-19 transmission.

35. Many women at FSL spoke only Spanish and reported significant challenges participating in groups and classes, which were at the time only offered in English. Language barriers will similarly prevent the effective identification of individuals who are particularly vulnerable or may have symptoms of COVID-19. Similarly, the failure to provide necessary aids to individuals who have auditory or visual disabilities could also limit the ability to identify and monitor symptoms of COVID-19.

36. Facilities with a track record of neglecting individuals with acute pain and serious health needs under ordinary circumstances are more likely to be ill-equipped to identify, monitor, and treat a COVID-19 epidemic.

37. Similarly, facilities with a track record of failing to adequately manage single individuals in need of emergency care are more likely to be seriously ill-equipped and under-prepared when a number of people will need urgent care simultaneously, as would occur during a COVID-19 epidemic.

38. For individuals in facilities that have experienced these problems in the past, the experience of an epidemic and the lack of care while effectively trapped can itself be traumatizing, compounding the trauma of incarceration.

7

## V. Conclusion and Recommendations

39. Reducing the size of the population in jails and prisons is crucial to reducing the level of risk both for those within those facilities and for the community at large. As such, from a public health perspective, it is my recommendation that individuals who can safely and appropriately remain in the community not be placed in BOP facilities at this time. I also recommend that individuals who are already in these facilities should be evaluated for release.

40. This is more important still for individuals with preexisting conditions (e.g., heart disease and hypertension, chronic lung disease, chronic liver disease, suppressed immune system, morbid obesity, diabetes) or who are over the age of 65.

41. Health in jails and prisons is community health. Protecting the health of individuals who are detained in and work in these facilities is vital to protecting the health of the wider community.

I declare under penalty of perjury that the foregoing is true and correct.

April 24, 2020
Wilton, Connecticut

Dr. Jaimie Meyer

## CoreCivic/CIBOLA COUNTY CORRECTIONAL FACILITY
## TOWN HALL MEETING RECORD

Unit: 100, 200, 300, 400, 500, 600, 700, 800

Time Meeting Started:

Date of Meeting: 5-11-2020

Time Meeting Ended:

**Staff Attending the Meeting:**
Chief of Unit Management:   Woodard
Unit Manager: Padilla and Sabore
Detention Counselor: Molina, Mendez, Blea, Garcia
Case Manager:  Karlovich, Serrano, Phelps, Galindo
Correctional Officer:

**Agenda:**
- ❖ Positive COVID-19

**Subject Covered by Unit Management Team:**
- On May 7th the USMS notified Cibola that the transport from May 4th had contact from a positive COVID-19 detainee.  The detainees were tested and tested positive.
  - o Transport came from Otero
  - o Two female detainees are positive
  - o They lived in 200 B the isolation pod upon arrival and have not been in GP
  - o They are now housed in medical.
  - o No contact with General Population

- Sanitation
  - o Masks should be worn when leaving the housing units but is optional for detainees
  - o Wash hands for 20 seconds
  - o 10:1 bleach needs to be done during the 1100 count and 2200 count.

**Concerns brought up by the inmates:**
1.
2.
3.
4.

Unit Manager: _____                    Date: 5-11 wa

Chief of Unit Management: _____       Date: 5/11/20

March 30, 2020

VIA EMAIL

United States Marshal Service
District of New Mexico-Albuquerque

Re:    Request of CoreCivic, Inc.

On behalf of CoreCivic, Inc. ("CoreCivic"), I write in response to a request seeking information regarding CoreCivic's plans and procedures to prepare for and prevent the spread of novel coronavirus (COVID-19) among detainees, including those housed at the Cibola County Correctional Center. As a company that has partnered with the U.S. government for more than 30 years, CoreCivic is committed to assisting your inquiry and protecting the health and safety of its employees, the people entrusted to its care at each of its facilities, and the surrounding communities.

As such, in response to the COVID-19 pandemic, CoreCivic has implemented several additional precautionary and preventative actions to diminish its potential impact on the facility, its staff, and the detainees entrusted to its care. Such steps include, recommended actions from the Centers for Disease and Control and the New Mexico Department of Health. In addition to those helpful recommendations, the facility has implemented additional measures based on pragmatic and proactive preventative action, such as, but not limited to;

- Monitoring all persons entering the facility for signs/symptoms associated with COVID-19.

- Sanitizing transportation vehicles

- Instituting social distancing within the facility.

- Broadcasting information regarding enhanced hygiene techniques

- Providing Town Halls to disseminate new schedules and guidance

- Monitoring detainee symptoms, and increasing disinfectant procedures.

- Developing plans and additional precautions to handle staffing shortages should they arise during the COVID-19 pandemic.

In addition to the preventative measures, Cibola County Correctional Center is prepared to manage, any cases of COVID-19. The medical unit at Cibola County Correctional Center includes state-of-the-art equipment and two negative pressure rooms to assist in managing infectious diseases.

Beyond the steps taken at Cibola County Correctional Center. CoreCivic has taken additional company-wide steps with respect to COVID-19, including implementing a Coronavirus Medical Action Plan for each of our facilities; educating facility staff and inmates about the

reconsideration without setting the matter for a hearing. Should the Court decide to reopen the matter and proceed with the hearing, it should nevertheless affirm its previous decision that the defendant should be detained as both a flight risk and a danger to the community for all of the same reasons that it did at the initial hearing, in addition to the fact that since that hearing, the defendant has pleaded guilty to two charges carrying a mandatory minimum of ten years.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically Filed 4/13/20*
LETITIA CARROLL SIMMS
Assistant United States Attorney
201 3rd Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

*Electronically Filed 4/13/20*
LETITIA CARROLL SIMMS
Assistant United States Attorney

symptoms of the disease and enhanced hygiene practices to prevent its spread; ordering test kits for COVID-19; strengthening the medical intake process to identify those at high risk of being infected with or contracting COVID-19; and planning for staffing (including food service and medical) and housing contingencies if any member of the facility population or staff is diagnosed with COVID-19.  CoreCivic has also created a website to communicate information about COVID-19.  In order to provide clear information to the families of those individuals who are detained in our facilities, this website lists the facilities where social visitation has been suspended at the request of federal, state, or local partners.  A link to the CoreCivic website for COVID-19 is available here: https://www.corecivic.com/en-us/information-on-covid-19.

In addition to carrying out the infectious disease program mandated by the policy and taking numerous actions company-wide, CoreCivic also has implemented the steps recommended by different government partners to address the COVID-19 pandemic.  CoreCivic is in frequent communication with its partners to adhere with guidance and institute new procedures to slow the spread of COVID-19.  CoreCivic, at its partner's direction, has taken a number of actions to reduce the spread of COVID-19 in facilities including suspending social visitation and instituting increased screening of detainees in line with CDC guidance.

CoreCivic is actively engaged with its federal, state, and local partners, as well as the relevant public health agencies, to monitor the spread of COVID-19 and implement any additional precautionary measures its partners choose to take to combat this disease.  We appreciate our conversations with your staff and please do not hesitate to contact us if you have any questions.

Sincerely,

Luis Rosa Jr., Warden

### COVID 19 Action Questionnaire

**Facility Name and Address:** Core Civic- Cibola County Correctional Center 200 Cibola Loop, Milan NM 87020

**Name and Title - Facility POC:** Don Douglas, H.S.A

**Is Medical care provided by ICE/IHSC, an IGSA or a Contract?** CoreCivic

1. Declarant Name and degrees/certifications: **Don Douglas, BA BS MGT**

2. Employment Title, date started, very brief work hx: **Health Services Administrator, December 2019, nursing duties, administrator duties**

3. Description of current duties - **In current position, I am the administrator, responsible supervisor of the medical, mental health, and dental departments**

4. Is each detainee screened for disabilities upon admission? **Yes**

    a. By whom? (medical professional, disability coordinator, etc) **Nursing staff**

    b. Are identified disabilities further evaluated and reasonable accommodations provided as medically appropriate? **Yes**

5. What medical intake screenings do intake detainees receive?

    a. During intake medical screenings, are detainees assessed for fever and respiratory illness? **Yes, immediately after disembarking the transportation vehicle.**

    b. Are they asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days? **Yes**

    c. Are they asked whether they have traveled from or through area(s) with sustained community transmission in the past two weeks? **Yes**

6. Will the detainee's responses and the results of these assessments dictate whether to monitor or isolate the detainee? **Yes**

    **a.** Will those detainees who present symptoms compatible with COVID-19 be placed in isolation, where they will be tested? **Yes**

    **b.** If testing is positive, will they remain isolated and treated? **Yes**

    c. In case of any clinical deterioration, will they be referred to a local hospital? **Yes**

7. In cases of known exposure to a person with confirmed COVID-19, are asymptomatic detainees placed in cohorts? **Yes**

    a. Are detainees diagnosed with any communicable disease who require isolation placed in an appropriate setting in accordance with CDC or state and local health department guidelines? **Yes**

8. What are the facilities medical capabilities?

    a. Does the facility hold male and female detainees? **USMS (M/F)/ICE (MALE)/Cibola County (M/F).**

    **b.** Do detainees have daily access to sick call in a clinical setting? **Yes**

    c. Does the facility have an infirmary? **No**

    d. Is there access to Specialty Care? **Yes**

    e. Is there access to Hospital Care? **Yes**

9. Is there COVID19 screening, testing, treatment? **Yes, symptom treatment**

10. Please provide COVID 19 data

    i.  How many suspected cases of COVID-19 in the facility to date? **None.** How many are USMS detainees? **None**

    **ii.**  Where are they housed and how is it addressed? **N/A**

    iii.  How many confirmed cases of COVID-19? How many are USMS detainees? **None**

    iv.  Where are they housed and how are they treated? **N/A**

11.  Are USMS detainees in units separated from the inmate population? **Yes**

12. Does the facility have populations within its approved capacities? Is it overcrowded? **Yes, the facility has populations within approved capacities. It is not overcrowded.**

13. Has the facility increased sanitation frequency and thoroughness? Yes what is being done?   **The facility has increased sanitation and frequency. In addition to normal processes, the facility is sanitizing all living spaces during counts and an on-going basis.**

14. What sanitation supplies are provided to staff and detainees? (disinfectants, hand sanitizer, soap, masks, etc) **Detainees have daily access to multiple approved cleaners to include disinfectant, soap, and PPE as required by the SDS and/or circumstance.**

15. Are social visits restricted and if so how? **Yes.  The social visitation program is currently cancelled.**

16. Are legal visits restricted and if so how? **No access restrictions.  Provisions are in place to provide additional protections to attorneys and clients.**

17. Are there other restrictions to implement social distancing such as gatherings, tours, etc? **Yes. Detainees are being encouraged to practice social distancing in their housing units.  Gathering of five, or more**

**From:**       Simms, █████████
**To:**         Simms, █████████
**Subject:**    FW: USMS arrests from MDC
**Date:**       Tuesday, March 31, 2020 11:57:50 AM

---

**From:** Cozart, █████████████████████
**Sent:** Monday, March 30, 2020 5:21 PM
**To:** Anderson, ██████████████████████ ██████ Elfers
████████████████████████████ Kastrin, ██████████████████████████;
Braun, ████████████████████████████████████████;
**Cc:** Harper, ████████████████████████ Gambone, ████████████████
██████████████████████████ Nevarez, ██████████████████████████; Hunt, ████████
███████████████████; Bovee, ████████████████████████; Burrell, ████████
███████████████████; Chavez, ████████████████████████; Lashley, █████████
Federici, ████████████ Yarbrough ◄█████████████████████████
**Subject:** USMS arrests from MDC

Good Afternoon,

Due to the recent confirmed COVID-19 case at MDC, and out of an overabundance of caution, the USMS will no longer accept any inmates coming from the Metropolitan Detention Center.  As the USMS is charged with the safety and security of all Federal inmates in our custody we believe that accepting inmates from MDC poses an unnecessary risk to our prisoner population, the court family, and our employees.  Please have the charging agencies place detainers with MDC and they can pick them up when the quarantine time has concluded.

We will notify all Federal Agencies that the USMS will not accept any inmates coming from MDC for the time being.  I will ask that if you come across a WRIT by one of our Federal partners that has an in custody inmate at MDC, please inform them that the USMS will not take custody until MDC reports their quarantine time has been completed.  Please distribute this to your personnel.

R,

Sean Cozart
Supervisory Deputy, Operations
D/NM – Albuquerque
████████████████████

detainees, outside the units is discouraged. **Formal programs have been cancelled pending further notice.**

18. Is the facility screening all staff, contractors, volunteers and vendors when they enter the facilities including body temperatures? **Yes**

19. Is the facility screening all detainee intakes when they enter the facilities including travel histories and possible confirmed cases of COVID 19 contact? **Yes**

20. Does the facility continue checking body temperatures in the detainee population and have procedures to continue monitoring the populations' health? **Temperatures are taken during sick call and provider appointments. If cohorted or isolated based on suspicion, temperatures will be taken at least 4 times per day.**

21. Does the facility provide education on COVID-19 to staff and detainees that includes symptom education, the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting to seek medical care if they feel ill? **Yes**

22. Has the facility identified housing units for the quarantine of patients who are suspected of or test positive for COVID-19 infection? **Yes**

23. Briefly, what other initiatives have been taken to address COVID 19? **Strict adherence to State Department of Health and CDC directives.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**
**Plaintiff,**

vs.

           **No. 20-CR-267 JP**

**ERIC BELDING,**
      **Defendant.**

### DEFENDANT ERIC BELDING'S EMERGENCY MOTION FOR RELEASE PENDING SENTENCING

COMES NOW, Defendant Eric Belding, by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby moves this Honorable Court pursuant to the provisions of 18 U.S.C. § 3145(c), the holding set forth in *United States v. Jones,* 979 F.2d 804, 806 (10th Cir. 1992) (district court may consider release pending sentencing for defendant who pleaded guilty to controlled substances offense carrying maximum penalty of 40 years under "exceptional reasons" provision of § 3145(c)) and *United States v. Ganadonegro,* No. 09-cr-0312-JB, 2012 WL 1132166, at 5 (March 14, 2012) (Browning, J.) (unreported) (holding *Jones* permits release for exceptional circumstances pursuant to § 3145(c) even in a case where 18 U.S.C. § 3143(a)(2) applies), and changed circumstances which rise to exceptional due to the COVID-19 pandemic that poses a direct risk to Eric Belding that is far greater if he continues to be detained during this public health crisis, for an order allowing Mr. Belding's release pending sentencing.

### BACKGROUND

Mr. Belding was arrested on April 15, 2019, pursuant to a complaint filed in the United States District Court for the District of New Mexico, charging possession with intent to distribute controlled substances. He has remained in custody since that date.

1

On January 27, 2020, Mr. Belding entered guilty pleas to two counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and (C). On March 24, 2020, the presentence report (PSR) was issued by the U.S. Probation Office. According to the PSR, Mr. Belding's advisory guideline range is 108-135 months. However, the plea agreement pursuant to Fed.R.Crim.P. 11(c)(1)(C), calls for a sentencing cap of 120 months. Moreover, Mr. Belding represents that he should be awarded a two-level offense level reduction pursuant to U.S.S.G. § 5C1.2 for the safety valve provision as he is in criminal history category I.[1] The only issue to be resolved by the court with regard to the safety valve applicability will be whether a firearm possession would disqualify Mr. Belding from the safety valve.

Mr. Belding now asks the court to release him on conditions of release pending sentencing pursuant to 18 U.S.C. § 3145(c) because exceptional reasons now exist which militate in favor of his temporary release. Mr. Belding submits that conditions of release could be fashioned to ensure he is neither a flight risk nor a danger to the community. The only question is whether exceptional reasons exist to justify his release pending sentencing.

## ARGUMENT

I.    **The Court should authorize Mr. Belding's release pending sentencing pursuant to 18 U.S.C. § 3145(c) because he is not a flight risk nor a danger to the community and now exceptional reasons exist to release him.**

Following a plea of guilty, the provisions of 18 U.S.C. § 3143(a)(2) are triggered, permitting a court to, under 18 U.S.C. § 3145(c), order a defendant's release if a court finds that the defendant is not a danger to the community or a flight risk, and exist exceptional reasons exist to justify release. *United States v. Ganadonegro*, 2012 WL 1132166, at 3; *United States v.*

---

[1] Mr. Belding intends to file an objection to the PSR for probation's failure to award Mr. Belding a two-level reduction for safety valve pursuant to U.S.S.G. § 5C1.2.

*Peterson*, 185 F.3d 875, 1999 WL 407493, at *1 (10th Cir.1999) (unpublished table decision); *United States v. Kinslow*, 105 F.3d 555, 556–57 (10th Cir.1997)(stating that a defendant who sought release pending sentencing for a crime of violence must show by clear and convincing evidence that he was "not likely to flee or pose a danger to any other person or the community" and "making a clear showing of exceptional reasons why his detention would not be appropriate"); *United States v. Jager*, No. 10–1531, 2011 WL 831279, at * 18 (D.N.M. Feb. 17, 2011) ("Once a court finds that a defendant meets the criteria of § 3143(a)(2), a court may order a defendant's release if a court finds that the defendant is not a danger and there exists exceptional circumstances to justify release.").

In fact, in *United States v. Jones*, the defendant pleaded guilty to a controlled substances offense carrying maximum penalty of 40 years. 979 F.2d 804, 806 (10th Cir. 1992). The Tenth Circuit held a district court may consider release under § 3145(c) if exceptional reasons exist notwithstanding the provisions of 18 U.S.C. § 3143(a)(2). No clear formula exists to determine if exceptional reasons are present. "A wide range of factors may bear upon the analysis." *Ganadonegro*, 2012 WL 1132166, at 4 (*quoting United States v. Garcia*, 340 F .3d 1013, 1018 (9th Cir.2003)). The Tenth Circuit has stated that exceptional reasons means "being out of the ordinary: uncommon, rare." *Id.* (quoting *United States v. Wages*, 271 F.App'x 726, 727 (10th Cir.2008) (per curiam)(unpublished)).

By adopting the term "exceptional reasons," and nothing more, Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad "experience with the mainsprings of human conduct." *Mozes v. Mozes*, 239 F.3d 1067, 1073 (9th Cir.2001). Indeed, courts across the country have used that discretion to allow release and find exceptional reasons. *United States v. Charger*, 918 F.Supp. 301, 303-04

(D.S.D.1996)(finding exceptional reasons where young first-time offender was in need of guidance available to him at his father's home and was participating in out-patient alcohol treatment, such that to imprison him "would be counterproductive .... [and] would harm defendant and the interests of society"); *United States v. Cantrell*, 888 F.Supp. 1055, 1057-58 (D.Nev.1995)(ordering release of Native American defendant who was subject to dual prosecution by federal and tribal courts and was participating in substance abuse program); *United States v. Salome*, 870 F.Supp. 648, 653-55 (W.D.Pa.1994); *Contra, United States v. Wages*, 271 F. App'x 726 (10th Cir. 2008)( Defendant's age, lack of prior criminal record, use of a wheelchair and need for a special mattress to avoid pain, limited ability to hear, and need to care for his elderly mother did not constitute exceptional reasons warranting release pending sentencing on conviction for possession of child pornography).

Mr. Belding submits that since entering his guilty plea exceptional circumstances have developed requiring his temporary release from custody. As of March 30, 2020, the new strain of coronavirus which causes COVID-19, has infected over 693,224 people, leading to at least 33,106 deaths worldwide.[2]  On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[3]  Governor Lujan-Grisham declared a State of Emergency on March 11, 2020,[4] and has ordered schools to close, restaurants and bars to operate at 50% capacity, prohibit bar seating, and space tables six feet apart.[5]  All of these are measures

---

[2]World Health Organization- *Coronavirus Disease 2019- Situation report 70*, March 30, 2020, *at* https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200330-sitrep-70-covid-19.pdf?sfvrsn=7e0fe3f8_2 (updating regularly).

[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[4] https://www.governor.state.nm.us/2020/03/11/updated-governor-department-of-health-announce-first-positive-covid-19-cases-in-new-mexico/
[5] https://www.kob.com/albuquerque-news/covid-19-state-issues-public-health-order-limiting-restaurant-bar-occupancy-to-no-more-than-50/5674949/

impossible to achieve within a detention facility. Mayor Tim Keller ordered precautionary measures in Albuquerque on March 14, 2020,[6] including closure of senior centers, community centers, and all bio park facilities, and ordering city workers to work from home, and following a city council vote on March 16 to grant him greater emergency powers, is expected to order further protective measures.[7] As of April 1, 2020, there are 363 positive cases in New Mexico and six deaths.[8]

The CDC has issued guidance that individuals at higher risk of contracting COVID-19—adults over 60 years old and people with chronic medical conditions such as lung disease and heart disease—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[9] With confirmed cases in New Mexico that indicate community spread,[10] we must take every necessary action to protect vulnerable populations and the community at large.

### Mr. Belding's Current Conditions of Confinement Place him at Great Risk for COVID-19

Conditions of pretrial or presentence confinement create the ideal environment for the transmission of contagious disease.[11] Inmates cycle in and out of pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the

---

[6] https://www.cabq.gov/mayor/news/mayor-continues-local-response-to-coronavirus-as-first-presumptive-positives-are-found-in-new-mexico
[7] https://www.abqjournal.com/1430500/new-bill-would-give-abq-mayor-more-emergency-powers.html (March 11, 2020)
[8] https://nmhealth.org/news/alert/2020/4/?view=890
[9] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.
[10] The KOAT story supra n. 7 indicates that while the first 5 cases in Bernalillo County had travel-related exposure; the next 8 did not.
[11] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

best of times, medical care is limited in pretrial detention centers.[12] Many people who are incarcerated also have chronic conditions, like diabetes, hepatitis, or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[13] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[14] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases as of February.[15] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[16] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[17] Bernalillo County District Attorney Raúl Tórrez, joined by Chief Public Defender Ben Baur, has asked the Supreme Court to intervene and delay hearings for out of custody defendants.[18] In his letter to the Supreme Court, Chief Public Defender Baur

[12] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[13] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[14] Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge (Mar. 7, 2020) at https://bit.ly/2TNcNZY.

[15] Rhea Mahbubani, Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials, Business Insider (Feb. 21, 2020) at https://bit.ly/2vSzSRT.

[16] Jennifer Hansler and Kylie Atwood, Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.

[17] Claudia Lauer and Colleen Long, US Prisons, Jails On Alert for Spread of Coronavirus, The Associated Press (Mar. 7, 2020) at https://apnews.com/af98b0a38aaabedbcb059092db356697.

[18] Katy Barnitz, DA to Supreme Court: 'More drastic measures are needed'; Chief Public Defender says virus could spread rapidly in jails Albuquerque Journal, March 17, 2020, p. A5, available at: https://abqjournal-nm.newsmemory.com/?token=6de4ac0363592ffd8224cfe06797f461_5e70fd08_2eb4cef&selDate=20200317&utm_source=emailMarketing&utm_medium=email&utm_campaign=TecnaviaMorningPush

noted, "Social distancing is the single most effective tool we have to slow the spread and flatten the curve to ensure that adequate healthcare resources are available as the numbers of infections increase. Unfortunately, incarcerated people do not have the ability to utilize social distancing techniques or to protect themselves in any meaningful manner." He called for a suspension of arrest and detention for non-violent offenses, failure to pay fines, technical violations of release or probation, and other violations which do not threaten public safety. On March 17, in response to these pleas and the pandemic, the New Mexico Supreme Court suspended all criminal jury trials, in addition to its previous suspension of civil trials.[19] On April 1, 2020, this Court suspended all civil and criminal jury trial until May 1, 2020.

### Specific Conditions at the Cibola Correctional Center

The Cibola Correctional Center (CCC) is one of New Mexico's largest pretrial detention facilities housing pretrial and presentence detainees; it has a capacity of 1,149,[20] with a current "mission" encompassing immigration detainees, marshal detainees, and Cibola County detainees. It has had repeated medical issues. Between 2007 and 2016 before it was closed due to issues, it was given 30 citations for poor medical care, including the lack of an on-location doctor, failure to perform CPR, and lack of mental health evaluation for a suicidal inmate.[21] In 2016, it was closed. "[T]he US Department of Justice announced that all 13 of [its contracted] private prisons would be closed following a scathing audit that revealed they were markedly less safe than similar facilities run directly by the government. The first scheduled to close would be the one where Jaramillo suffered his catastrophic illness, as reports indicated that the Cibola County

---

[19] https://www.nmcourts.gov/news.aspx
[20] https://en.wikipedia.org/wiki/Cibola_County_Correctional_Center
[21] Wessler, Seth Freed ,*Federal Officials Ignored Years of Internal Warnings About Deaths at Private Prisons*, ISSN 0027-8378. (2016-06-15).

prison was among the worst providers of medical care in this cohort of private prisons."[22]  It reopened shortly thereafter as an ICE and county detention facility, then began accepting marshals prisoners.  Shortly after it reopened, there was the very high-profile death of a Honduran transgender refugee shortly after she arrived at CCC.[23]

*Exceptional Circumstances Have Developed Necessitating Mr. Belding's Release*

The circumstances that existed when Eric Belding was ordered detained and subsequently entered his guilty plea have now changed.  There is a pandemic that poses a direct risk to Eric Belding that is far greater if he continues to be detained during this public health crisis. Eric Belding is vulnerable because he suffers from cardiomyopathy which is a disease of the heart muscle that makes it harder a person's heart to pump blood to the rest of his body. Cardiomyopathy can lead to heart failure. Mr. Belding was born with this heart defect which was initially diagnosed as a very large ventricular septal defect.

Since he has been in custody at the CCC, he has been seen by medical personnel and advised that tests show that his heart is enlarged as a result of reduced ventricular function. That means his heart is not pumping the necessary amount of blood into Mr. Belding's body. Essentially, his heart has enlarged as a result of having to work overtime in order to pump blood into Mr. Belding's system. According to the CDC, someone like Mr. Belding who suffers from cardiac disease is at higher risk of suffering from severe complications, even death, if he contracts COVID-19.[24]

---

[22] Oliver Laughlin, *Man's death hints at wretched medical care in private immigration prisons*, The Guardian (Nov. 1, 2016) available at:  https://www.theguardian.com/us-news/2016/nov/01/jose-jaramillo-private-immigration-prisons-medical-care

[23]  Sandra E. Garcia, *Independent Autopsy of Transgender Asylum Seeker Who Died in ICE Custody Shows Signs of Abuse*, New York Times, (Nov. 27, 2018) available at: https://www.nytimes.com/2018/11/27/us/trans-woman-roxsana-hernandez-ice-autopsy.html

[24] https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html

Since the widespread contagion of COVID-19, Courts have been taking steps to protect those defendants at high risk of complications or dying from the virus. In *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020), the Court released a post-plea presentence defendant noting "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense". In *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020), the Court released the defendant with a criminal history in a gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement".

Given the alarming rate of spread of COVID-19 and the demonstrated fact that individuals like Eric Belding could potentially die if contaminated by the virus, exceptional circumstances exist which militate in favor of temporarily releasing Mr. Belding to the third party custody of his father, Dana Belding. From Eric Belding's perspective, his life is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. While it is true that Mr. Belding was arrested several times with drugs and guns in a span of about 15 months, given his now compromised state of health and his sobriety for the past 12 months, the likelihood that he will violate conditions of his release have diminished.

Critically, during this temporary release, Eric Belding will not be left to his own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent

crime while on release.[25]  In the District of New Mexico, the Pretrial Services Violations Summary Report for the 12-Month Period Ending September 30, 2018, of the 919 cases in release status, there were violations in only 14.6% of the cases, and only 33 failures to appear. There were zero rearrest violations (for new crimes).[26]  The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives. Eric Belding's father has confirmed with counsel that he is willing to act as Mr. Belding's third-party custodian, provide a safe place for Mr. Belding to reside in the family home with his parents. Eric Belding submits that release to the third-party custody of his father, electronic monitoring, home confinement and supervision by pretrial services represent conditions the court may impose to ensure Mr. Belding will not pose a danger to the community or flee.

The totality of circumstances in this case given Mr. Belding's serious heart disease and the wide and rapid spread of COVID-19 establish exceptional reasons to release him pending sentencing.

Moreover, the plea in this case may allow for the possibility of a sentence of time-served should the court find Mr. Belding should be awarded a two-level offense level reduction for the safety valve pursuant to U.S.S.G. § 5C1.2.[27]  Leaving Mr. Belding in custody in the midst of the national health crisis we face today could expose him to the possible deprivation of life. The

---

[25] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.
[26] Table H-15, U.S. District Courts -- Pretrial Services Violations Summary Report For the 12-Month Period Ending September 30, 2018, available at:  http://jnet.ao.dcn/court-services/probation-pretrial-services/caseload-tables/pretrial-services-h-tables-september-2018/pretrial-services-violations-summary-report
[27] While the presentence report issued by the U.S. Probation office did not award Mr. Belding a two-level offense level reduction for the safety valve, Mr. Belding intends to file an objection thereto. If this Court rules Mr. Belding qualifies for a two-level reduction pursuant to U.S.S.G. § 5C1.2, the Court may sentence Mr. Belding to a sentence without regard to the statutory minimum.

exceptional reasons are demonstrated here. Therefore, the only other component allowing release pending sentencing would be a finding by clear and convincing evidence that he is not likely to flee or pose a danger to any other person or the community. This burden is met by the fact that Mr. Belding's heart condition has deteriorated while in custody and now potentially faces a risk of death if exposed to COVID-19. If released under home confinement and electronic monitoring, the Court may be assured that Mr. Belding will not leave his parents' home as doing so would expose him to grave danger to his health. It cannot be meaningfully disputed that Mr. Belding is not a flight risk. He has never been known to flee from law enforcement and has been a lifelong resident of Albuquerque.

Counsel for the government oppose the relief requested herein.

Wherefore, for the foregoing reasons, Mr. Belding respectfully moves this Honorable Court for an order allowing release pending sentencing.

Respectfully submitted,

Electronically filed 4/2/20
Erlinda O. Johnson
Counsel for Eric Belding
620 Roma Ave. NW
Albuquerque, NM 87102

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April 2020, I filed the foregoing motion electronically through the CM/ECF system, which caused opposing counsel for the Government to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Electronically filed 4/2/20
Erlinda O. Johnson
Counsel for Mr. Belding

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　CRIMINAL NO. 20-CR-267 JAP
ERIC BELDING,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　)

## THE UNITED STATES' RESPONSE TO THE DEFENDANT'S EMERGENCY MOTION FOR RELEASE PENDING SENTENCING

The sentencing hearing scheduled for the same time defendant's emergency motion for release pending sentencing will render the defendant's motion moot. In addition, the defendant cannot request compassionate release yet because the Court has not sentenced him and he has not met the administrative requirements of the statute.

## FACTS

The defendant plead guilty to four counts of possession with the intent to distribute controlled substances on January 27, 2020. Doc. 29. He requested to be released pending sentencing. Doc. 32. The Court will hear argument on that request at the same hearing where it will sentence the defendant. Doc. 33.

## I. The Court should deny the defendant's motion for release because when the Court imposes a sentence at the hearing the motion will be moot.

A defendant may be released pending sentencing. *See* 18 U.S.C. § 3143(a); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (The "exceptional reasons" found in 18 U.S.C. § 3145(c) may justify release pending sentencing under 18 U.S.C. § 3143). However, sections 3143 and 3145 do not apply after a court sentences a defendant. *See Id.* As noted above, the Court scheduled the defendant's sentencing on the same date it will hear argument on this motion. Because the defendant's motion only applies presentence, the result of the hearing will be the same: the Court will remand the defendant into the custody of the United States Marshals in order to serve out the remainder of his sentence. Thus, in order to conserve judicial resources, the Court should sentence the defendant, not hear argument on this motion, and deny it.

## II. The defendant is not eligible for compassionate release because the Court has not sentenced him and he has not met the statutory requirements for such relief.

A defendant can request a court grant him "compassionate release" from his sentence based on "extraordinary and compelling reasons." 18 U.S.C. § 3682(c)(1)(A)(i). Before a defendant can make that request, he must be sentenced, ask the Bureau of Prisons (BOP) to make the request on his behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals. 18 U.S.C. § 3682(c)(1)(A); *United States v. Raia*, No. 20-1033, 2020 U.S. App. LEXIS 10582 *1 (3d Cir. Apr. 2, 2020). Here, there is no evidence that the defendant has requested compassionate release from the BOP or given it 30 days to respond. Similarly, there is no evidence that he has

2

exhausted other possible administrative appeals. That is likely because he has not been sentence yet. On the date this motion is scheduled to be heard, the Court will sentence and remand the defendant. Once that occurs, the defendant can start meeting the statutory requirements for compassionate release. Until that occurs, this Court should not hear argument on compassionate release.

## CONCLUSION

On the date this motion is scheduled to be heard, the defendant will be sentenced and begin to pay his debt to society. That sentence will render his motion for release pending sentencing moot. Thus, the Court should deny the motion and not hear argument. Furthermore, the Court should not hear any argument regarding compassionate release because the defendant has not met the statutory requirements for such release.

JOHN C. ANDERSON
United States Attorney

*Electronically Filed 4/10/20*
MARK C. PFIZENMAYER
Assistant United States Attorney
201 3rd Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
mark.pfizenmayer@usdoj.gov

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**
**Plaintiff,**

vs.                                                         **No. 20-CR-267 JP**

**ERIC BELDING,**
**Defendant.**

## DEFENDANT ERIC BELDING'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR RELEASE PENDING SENTENCING

COMES NOW, Defendant Eric Belding, by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby respectfully submits the following reply to the government's response to defendant's emergency motion, pursuant to the provisions of 18 U.S.C. § 3145(c), for release pending sentencing:

1.      In his emergency motion, Mr. Belding advanced multiple arguments based on information that supports his release pending sentencing and self-surrender should the court authorize release.

2.      The Government's response does not take into consideration the extreme high risks Mr. Belding faces should he contract COVID-19. As detailed in Mr. Belding's emergency motion, as a cardiac patient, he faces severe complications from COVID-19.

3.      Indeed, the status as high-risk individual and the current medical crisis that will inevitably put all detainees at risk has been considered by numerous courts throughout the country. As put succinctly by one district court judge, "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided." *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D.

Cal. Mar. 25, 2020). Another court specifically based its decision on the fact that release protects not just the defendant, but the community. *See United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement").[1]

4.     It is undisputed that Mr. Belding currently suffers from a cardiac condition and in fact was born with a heart defect. This condition places him at a higher risk of complications and even death, should he contract COVID-19.

5.     In order to minimize his risk of death, this Court must allow for his release to the third party custody of his father, Dana Belding, with electronic monitoring, home confinement

---

[1] For other decisions taking the pandemic into account in making release decisions, *see, e.g., Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Garlock*, 2020 WL 1439980, at *1 (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"; *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrique*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *I (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"). Although many of these decisions are based in part on particular health problems of the defendant, the basic principle that the pandemic should affect the balancing of interests is equally applicable here.

and reschedule Eric Belding's sentencing hearing to a date after the pandemic and national health crisis is under control.

6.    The Cibola Correctional Center and any Bureau of Prisons facility is not a closed hermetic system: staff shuttle in and out of the facility around the clock. And any individuals – such as staff – can carry the virus for days without showing any symptoms. Regardless of well-intentioned screening efforts, the virus will make its way into the facility, and in fact it is in all likelihood already there. The virus has already found its way into the Santa Fe County Adult Detention Center, a federal and state facility.[2] It is only a matter of time before cases begin surfacing at the Cibola Correctional Center.

7.    To sentence Mr. Belding expeditiously and ship him off to the Bureau of Prisons does not address his high risk of complications or even death from COVID-19 should Mr. Belding be infected. The Bureau of Prisons is even more dangerous for Mr. Belding.

8.    As of April 14, 2020, 446 federal inmates in Bureau of Prisons (BOP) facilities have tested positive for COVID-19 and 14 have died.[3] To sentence Mr. Belding on April 29, 2020, to a term in the BOP could potentially end up in a death sentence as COVID-19 appears to be rapidly spreading within the BOP.  Most alarmingly is that fact that COVID-19 cases at one of the BOP medical facilities have surged dramatically.[4]  This reality poses a great risk for Eric Belding as he would likely be designated to a medical facility given his medical condition.

9.    The Supreme Court has held that exposure to environmental threats to an incarcerated person's physical wellbeing, where exposure is preventable, can constitute a

---

[2] https://www.kob.com/albuquerque-news/inmate-tests-positive-for-covid-19-at-santa-fe-adult-correctional-facility/5699788/
[3] https://www.bop.gov/coronavirus/
[4] https://www.newsobserver.com/news/coronavirus/article241801076.html

violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 28 (1993)

10.     In order to safeguard Mr. Belding's life and avoid a violation to his Eighth Amendment rights, he begs the Court to vacate the April 29, 2020, sentencing hearing and authorize his release pending a future sentencing hearing.

Wherefore, for the foregoing reasons and the reasons set forth in Mr. Belding's emergency motion for release, Mr. Belding respectfully moves this Honorable Court for an order vacating the April 29, 2020, sentencing hearing and allowing release pending sentencing.

Respectfully submitted,

Electronically filed 4/14/20
Erlinda O. Johnson
Counsel for Eric Belding
620 Roma Ave. NW
Albuquerque, NM 87102

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April 2020, I filed the foregoing motion electronically through the CM/ECF system, which caused opposing counsel for the Government to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Electronically filed 4/14/20
Erlinda O. Johnson
Counsel for Mr. Belding

Grievance No.:___2020-504-00304 -G_____2005151_____                                    14-5B

**RESPONDING STAFF MEMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

*The facility is in compliance with State of New Mexico, CDC, USMS guidelines for operation during a global pandemic. The facility is transparent in communication with residents in terms of COVID-19 management.  Two offenders did arrive from Otero that were positive for the illness, however, the grievant is not exposed to the virus as those offenders remain in Medical on quarantine, and are also both female.*

**RESPONDING STAFF MEMBER'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

Remedy denied; the facility cannot release detainees from custody, that is a function of the Court.  Facility will gladly forward the grievance to the USMS, but recommends inmate send directly via certified US mail to ensure the integrity of the correspondence in the eyes of the grievant.

Responding Staff Member's Printed Name:___**M. Sedgwick**___                          Title:_____**A/W**___

Responding Staff Member's Signature: _____           Date:_5-15-2020_

Inmate/Resident's Signature (upon receipt): __David Greenhouse__           Date: _____

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I wish To Appeal Decision In Accordance With The Prison Litigation Reform Act

RECEIVED

MAY 1 8 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

The Courts determine Release

Denied

Warden/Administrator's Signature: _____           Date: _5-18-2020_

Inmate/Resident's Signature (upon receipt) _____           Date: _____

03/07

Watson Rosa

Emergency

Grievance

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | | Incident Number | |
|---|---|---|---|---|

| Incident Date | 05/15/2020 | | Incident Time (HRS) | unknown |
|---|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

| Based on your own knowledge, what did you see, hear, and do? |
|---|
| Today, May 15, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00304-G from Inmate/ Detainee David Greathouse #06216151, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility.  While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency. |

| Did you receive any injuries?  YES or NO  (If YES, Explain Below) | NO |
|---|---|

| Were you evaluated by medical?  YES or NO | NO |
|---|---|

| Printed Name: | Birdie Jones | | | |
|---|---|---|---|---|
| Signature: | | | Date: | 05/15/2020 |
| Typed By: | B. Jones | | Date: | 05/15/2020 |

This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

2/26

Grievance No.: 2020-504-003070
2005173

*Emergency*

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Matthew Woods | |
|---|---|---|
| NUMBER: | 91058051 | HOUSING ASSIGNMENT: 700C |

INFORMAL RESOLUTION ATTACHED (Not required for an emergency grievance)?  ☐ YES  ☒ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

STATE GRIEVANCE: (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Warden ROEA & his Staff Is in direct ——→ See Attached

Requested Action: (Attach additional pages if necessary)

——→ See Attached

RECEIVED

MAY 18 2020

Grievance Coordinator

Inmate/Resident's Signature: _____  Date Submitted: 5-17-20

Page 1 of 2

03/07

White Copy: To Greivence Officer – Yellow Copy: To Inmate/ Resident File – Pink Copy: To Inmate/Resident

14-5B

6rievance No.:   2020-504-00307-G

**RESPONDING STAFF M EMBER'S REPORT:**  (Attach additional pages if necessary.  All pages must include the grievance number.)

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:**  (Attach additional pages if necessary.  All pages must include the grievance number.)

Only the courts can determine release of inmates.

| | | | |
|---|---|---|---|
| Responding Staff Member's Printed Name: | D. Silenzio | Title | Asst. Shift Commander |
| Responding Staff Member's Signature: | | Date: | 05/18/2020 |
| Inmate/Resident's Signature (upon receipt): | | Date: | 5-19-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I wish to appeal my rights are being viola

RECEIVED

MAY 21 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:**  (Attach additional pages if necessary.  All pages must include the grievance number.)

We do not determine releases. That
is a function of the courts.

Warden/Administrator's Signature: _____   Date: 5-22-2020

Inmate/Resident's Signature (upon receipt): _____   Date: _____

03/07

2020-504-00307-6

# <u>Grievance from</u>

A)   Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law  violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**
**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)**
and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

3 As of  March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239
have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u> <u>are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola</u> <u>County Corrections Center in a life threating enviroment  and situation while acting under color</u> <u>and code of state and federal law and thus  violating my due process rights . Due to the fact that</u> <u>all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by</u> <u>the constitution of the united states of america until  convected of the crime being detained for.</u> <u>The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults</u> <u>over 60 years old and people with cronic medical conditions and respitory conditions such as lung</u> <u>disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded</u> <u>areas and staying home as much as possible with confirmed cases in new mexico that indicate</u> <u>community spread we must take every necessary action to protect vulnerable population and the</u> <u>community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis</u> <u>Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u>
<u>My curent conditions of confinement at  Cibola County Corrections Center place me at great risk</u> <u>for COVID 19.</u>

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by
Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris</u> <u>Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at  Cibola County</u>

RECEIVED

MAY 18 2020

<u>**Corrections Center to imminant danger and crul and unusual punishment**</u>
<u>**and violateing mine and all detainee's eighth amendment rights .**</u>

<u>**Also**</u>  3 inmates have passed through <u>**Cibola County Corrections Center**</u> in the last 2 months and tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guidance and the governors public health emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr (Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease containment strategy. Beyond the known detrimental mental health effectsof solitary confinement,isolation of people who are ill in solitary confinement results in decresed medical attention and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective way to prevent transmission of the virus through droplets to others because ,except in specialized pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure rooms it is not equiped with enough of them to handle a outbreak and surge of the novel coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting, the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the rest of the facility and staff which further violates my 8th amendment.

<u>***Relief Requested***</u>
**That wardon Rosa forward this grievance to the US Marshall's and request
a judicial examination of the treatment of detainees and  totality of internal conditions at
Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 18 2020

Grievance Coordinator

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | Incident Number | |
|---|---|---|---|

| Incident Date | 05/18/2020 | Incident Time (HRS) | unknown |
|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 18, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00307-G from Inmate/ Detainee Matthew Woods #91058051, which he has designated as an emergency grievance.  This grievance is about his concerns that the COVID-19 virus has arrived inside our facility.  While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

**Did you receive any injuries? YES or NO (If YES, Explain Below)**   NO

**Were you evaluated by medical? YES or NO**   NO

| Printed Name: | Birdie Jones | | |
|---|---|---|---|
| Signature: | | Date: | 05/18/2020 |
| Typed By: | B. Jones | Date: | 05/18/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature: | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

2/26

*Emergency*

Grievance No.: _2020-504-0706-6_

_2005173_

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Cedric |
| NUMBER: | 88489051 | HOUSING ASSIGNMENT: 700C-101 |

INFORMAL RESOLUTION ATTACHED (not required for an emergency grievance): ☐ YES ☐ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| 1. Facility Staff | 8. Dental Services | |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE** (include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary.)

I diabetics and asthma an CCCC warden Risa
an Warden Assthu is deli oath 16

**Requested Action:** (Attach additional pages if necessary)

For received medical see

RECEIVED
MAY 18 2020
Grievance Coordinator

Inmate/Resident's Signature: _____  Date Submit: _____

Page 1 of 2

**White Copy:** To Grievence Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:**



5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | Incident Number | |
|---|---|---|---|

| Incident Date | 05/18/2020 | Incident Time (HRS) | unknown |
|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 18, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00306-G from Inmate/ Detainee Cedric Lee #88489051, which he has designated as an emergency grievance.  This grievance is about his concerns that the COVID-19 virus has arrived inside our facility.  While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

| Did you receive any injuries? YES or NO  (If YES, Explain Below) | NO |
|---|---|

| Were you evaluated by medical? YES or NO | NO |
|---|---|

| Printed Name | Birdie Jones | | |
|---|---|---|---|
| Signature | | Date | 05/18/2020 |
| Typed By | B. Jones | Date | 05/18/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date | |
|---|---|---|---|
| Employee/Witness Signature | | | |

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

6rievance No.:   2020-504-00306-G

## RESPONDING STAFF M EMBER'S REPORT: (Attach additional pages if necessary. All pages must include the grievance number.)

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe. If you wish
To reach out to the USMS, you may do so through your attorney.

## RESPONDING STAFF MEMBER'S DECISION: (Attach additional pages if necessary. All pages must include the grievance number.)

Only the courts can determine release of inmates.

| | | |
|---|---|---|
| Responding Staff Member's Printed Name: D. Silenzio | Title | Asst. Shift Commander |
| Responding Staff Member's Signature: | Date: | 05/18/2020 |
| Inmate/Resident's Signature (upon receipt): | Date: | 5/19/2020 |

## INMATE/RESIDENT APPEAL (Attach additional pages if necessary. All pages must include the grievance number.)

wish to appeal my Rights Pc

RECEIVED

MAY 21 2020

Grievance Coordinator

## WARDEN/ADMINISTRATOR'S DECISION: (Attach additional pages if necessary. All pages must include the grievance number.)

We do not determine releases. That
is a function of the courts.

| | | |
|---|---|---|
| Warden/Administrator's Signature: | Date: | 5-22-202 |
| Inmate/Resident's Signature (upon receipt): | Date: | 5-22-2 |

03/07

2020504-00306-6

## Grievance from

Cedric Lee

A)  Violation of my due process rights and violation of my eighth Amendment right to be free from
crul and unusual punishment by Cibola County Corrections Centers chain of command
Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,
intentionally and deliberately while acting under the color of law  violateing governor Lujan
Grishim social distanceing order and public safety order's to keep all new mexicans safe the
action exerted by Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris
Hayes,are as follows.
1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola
County Corrections Center to CDC and the proper government & medical agencies.**
2 Exposeing my self (whome by being exposed to the novel coronavirus which causes
covid 19 is at high risk due to life long asthma diagnosis and condition.) And DiaBe
and all detainee's at Cibola County Corrections Center. Creating a life threating situation for
my self as well as other in Cibola County Corrections Center and high risk individuals in the
community as well.
3 As of  March 11th, 2020, the **World Health Organization officially classified covid 19 as
pandimic since then 1,340,643 americans have been infected and 80,239**
have lost their lives due to this virus and **4,153,871 in the world have been infected resulting in
284,628 deaths world wide**
Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly
informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center
medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus
equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr.
Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u>
<u>are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola</u>
<u>County Corrections Center in a life threating enviroment  and situation while acting under color</u>
<u>and code of state and federal law and thus  violating my due process rights . Due to the fact that</u>
<u>all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by</u>
<u>the constitution of the united states of america until  convected of the crime being detained for.</u>
<u>The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults</u>
<u>over 60 years old and people with cronic medical conditions and respitory conditions such as lung</u>
<u>disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded</u>
<u>areas and staying home as much as possible with confirmed cases in new mexico that indicate</u>
<u>community spread we must take every necessary action to protect vulnerable population and the</u>
<u>community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis</u>
<u>Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes.</u>
<u>My curent conditions of confinement at  Cibola County Corrections Center place me at great risk</u>
<u>for COVID 19.</u>
conditions of pretrial or presentence confinement create the ideal enviroment for transmission of
contagious disease. By the actions exerted under color of state and federal law by
Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris</u>
<u>Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at  Cibola County</u>

RECEIVED

MAY 18 2020

2020-504-00306-G

**Corrections Center to imminant danger and crul and unusual punishment
and violateing mine and all detainee's eighth amendment rights .**
**Also**  3 inmates have passed through  **Cibola County Corrections Center** in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constituting  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure
rooms it is not equiped with enough of them to handle a outbreak and surge of the novel
coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to
effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,
the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

**_Relief Requested_**
**That wardon Rosa forward this grievance to the US Marshall's and request
a judicial examination of the treatment of detainees and  totality of internal conditions at
Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 18 2020

Grievance Coordinator

*Emergency grievance*

Grievance No.: 2020-504-00305-6    **14-5B**

2005171

## INMATE/RESIDENT GRIEVANCE

| **FULL NAME:** | Lante Porsha | | |
|---|---|---|---|
| **NUMBER:** | 06350151 | **HOUSING ASSIGNMENT:** | 700' C |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☑ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary)

My 14th amendment of due-Process & my 5th amendment due-Process, and my 8th amendment right to be free or cruel and unusual punishment has been violated by ccc Chain of command in the manner of

**Requested Action:** (Attach additional pages if necessary)

see [attachment] attachment for requested action and relief

RECEIVED

MAY 18 2020

Grievance Coordinator

**Inmate/Resident's Signature:** _____    **Date Submitted:** 05/16/2020

03/07

**White Copy:** To Greivence Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

14-5B

6rievance No.:   2020-504-00305-G

*Porcha, Lamba*

**RESPONDING STAFF M EMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

Only the courts can determine release of inmates.

| | | |
|---|---|---|
| Responding Staff Member's Printed Name:   D. Silenzio | **Title** | **Asst. Shift Commander** |
| Responding Staff Member's Signature: | **Date:** | **05/18/2020** |
| Inmate/Resident's Signature (upon receipt): | **Date:** | 5-19-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I wish to appeal the decision My rights were
violated

RECEIVED

MAY 22 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

We do not determine releases. That
is a function of the courts.

Warden/Administrator's Signature: _____   **Date:** 5-26-202

Inmate/Resident's Signature (upon receipt) _____   **Date:** _____

03/07

# Grievance from

Lante Porcha

---

A) Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)**
and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239**
have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes.</u>
**<u>My curent conditions of confinement at Cibola County Corrections Center place me at great risk for COVID 19.</u>**
conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u> are deliberately,directly and knowingly exposeing my self and all detainee's at **Cibola County**

RECEIVED

MAY 1 8 2020

Grievance Coordinator

2020-504-00305-6

<u>**Corrections Center to imminant danger and crul and unusual punishment**</u>
<u>**and violateing mine and all detainee's eighth amendment rights .**</u>
<u>**Also**</u>  3 inmates have passed through  <u>**Cibola County Corrections Center**</u> in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constitueing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.


According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "


**although Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure**
**rooms it is not equiped with enough of them to handle a outbreak and surge of the novel**
**coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to**
**effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,**
**the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

<u>*Relief Requested*</u>
**That wardon Rosa forward this grievance to the US Marshall's and request**
**a judicial examination of the treatment of detainees and  totality of internal conditions at**
**Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 18 2020

Grievance Coordinator

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | Incident Number | |
|---|---|---|---|

| Incident Date | 05/18/2020 | Incident Time (HRS) | unknown |
|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 18, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00305-G from Inmate/Detainee Lante Porcha #06350151, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

| Did you receive any injuries? YES or NO (If YES, Explain Below) | NO |
|---|---|

| Were you evaluated by medical? YES or NO | NO |
|---|---|

| Printed Name: | Birdie Jones | | |
|---|---|---|---|
| Signature: | | Date: | 05/18/2020 |
| Typed By: | B. Jones | Date: | 05/18/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

*Emergency Grievance*

Grievance No.: _2020-504 6315-6_
_2005192_

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Brandon Garcia |
|---|---|
| NUMBER: | 1056015 | HOUSING ASSIGNMENT: | 7000 |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)? ☐ YES ☑ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary)

cccc Has Repetuly exposed me to the
corona virus and is in → see attach-
ment

**Requested Action:** (Attach additional pages if necessary)

See Attachment for Requested
Action.

RECEIVED

MAY 19 2020

Grievance Coordinator

Inmate/Resident's Signature: _____ Date Submitted: _5/15/2020_

14-5B

Grievance No.:   2020-504-00315-G

**RESPONDING STAFF M EMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

Only the courts can determine release of inmates.

| Responding Staff Member's Printed Name: | D. Silenzio | Title | Asst. Shift Commander |
|---|---|---|---|
| Responding Staff Member's Signature: | | Date: | 05/19/2020 |
| Inmate/Resident's Signature (upon receipt): | | Date: | 5-19-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I want to appeal Because my
Rights are Being Violated

RECEIVED

**WARDEN/ADMINISTRATOR'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

We do not determine release. That is a
function of the courts.

Warden/Administrator's Signature: _____  Date: 6-3-2020

Inmate/Resident's Signature (upon receipt) _____  Date: _____

03/07

2020-504-00315-6

# <u>Grievance from</u>

A)  Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)** and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of  March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239** have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment  and situation while acting under color and code of state and federal law and thus  violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until  convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, My curent conditions of confinement at  Cibola County Corrections Center place me at great risk for COVID 19.</u>

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don <u>Douglas and Wardon Luis  Rosa,  Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at  Cibola County</u>

RECEIVED

MAY 12 ...

2020-SDV·00315-6

**<u>Corrections Center to imminant danger and crul and unusual punishment</u>**
**<u>and violateing mine and all detainee's eighth amendment rights .</u>**
**<u>Also</u>** 3 inmates have passed through  **<u>Cibola County Corrections Center</u>** in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process constituteing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if aviailable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure**
**rooms it is not equiped with enough of them to handle a outbreak and surge of the novel**
**coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to**
**effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,**
**the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

### *<u>Relief Requested</u>*
**That wardon Rosa forward this grievance to the US Marshall's and request**
**a judicial examination of the treatment of detainees and  totality of internal conditions at**
**Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 1 9 2020

Grievance Coordinator

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | | Incident Number | |
|---|---|---|---|---|

| Incident Date | 05/19/2020 | | Incident Time (HRS) | unknown |
|---|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 19, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00315-G from Inmate/ Detainee Brandon Garcia #10056151, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

| Did you receive any injuries? YES or NO (If YES, Explain Below) | NO |
|---|---|

| Were you evaluated by medical? YES or NO | NO |
|---|---|

| Printed Name: | Birdie Jones | | | |
|---|---|---|---|---|
| Signature: | | | Date: | 05/19/2020 |
| Typed By: | B. Jones | | Date: | 05/19/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C.**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

2/26/13

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

EMERGENCY

Grievance No.: 2020-504-00314-G

2005191

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Duane Day | |
|---|---|---|
| NUMBER: | 7676651 | HOUSING ASSIGNMENT: 700 c |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☑ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Warden Rosa Cibola County Correctional Center Staff
and  →  SEE ATTACHMENT

**Requested Action:** (Attach additional pages if necessary)

SEE ATTACHMENT

RECEIVED

MAY 19 2020

Grievance Coordinator

Inmate/Resident's Signature: _____ Date Submitted: 5/17/20

03/07
**White Copy:** To Grievence Officer – **Yellow Copy**: To Inmate/ Resident File – **Pink Copy**: To Inmate/Resident

14-5B

6rievance No.:   2020-504-00314-G

**RESPONDING STAFF M EMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

Only the courts can determine release of inmates.

| | | | |
|---|---|---|---|
| Responding Staff Member's Printed Name: | D. Silenzio | Title | Asst. Shift Commander |
| Responding Staff Member's Signature: | | Date: | 05/19/2020 |
| Inmate/Resident's Signature (upon receipt): | | Date: | 5-20-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I want to appeal Because my rights
were violated

RECEIVED

MAY 2 0 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

We do not determine releases. That is a
function of the courts.

Warden/Administrator's Signature: _____  Date: 6·3·2020
Inmate/Resident's Signature (upon receipt) _____  Date: _____

03/07

2020-SZY-00714-6

# __Grievance from__

A)  Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson, Chief Of Security Morris Hayes, are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)** and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide**

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u> <u>are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola</u> <u>County Corrections Center in a life threating enviroment and situation while acting under color</u> <u>and code of state and federal law and thus violating my due process rights . Due to the fact that</u> <u>all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by</u> <u>the constitution of the united states of america until convected of the crime being detained for.</u> <u>The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults</u> <u>over 60 years old and people with cronic medical conditions and respitory conditions such as lung</u> <u>disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded</u> <u>areas and staying home as much as possible with confirmed cases in new mexico that indicate</u> <u>community spread we must take every necessary action to protect vulnerable population and the</u> <u>community at large. All of which has been habitualy violated by</u> Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,

<u>My curent conditions of confinement at Cibola County Corrections Center place me at great risk</u> <u>for COVID 19.</u> conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris</u> <u>Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at</u> **Cibola County**

RECEIVED

MAY 19 2020

2020-504-00314-6

**Corrections Center to imminant danger and crul and unusual punishment
and violateing mine and all detainee's eighth amendment rights .**
**Also** 3 inmates have passed through **Cibola County Corrections Center** in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure
rooms it is not equiped with enough of them to handle a outbreak and surge of the novel
coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to
effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,
the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

***Relief Requested***
**That wardon Rosa forward this grievance to the US Marshall's and request
a judicial examination of the treatment of detainees and  totality of internal conditions at
Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 19 2020

Grievance Coordinator

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | Incident Number | |
|---|---|---|---|
| Incident Date | 05/19/2020 | Incident Time (HRS) | unknown |

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 19, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00314-G from Inmate/ Detainee Duane Day #77676051, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

| Did you receive any injuries? YES or NO (If YES, Explain Below) | NO |
|---|---|
| Were you evaluated by medical? YES or NO | NO |

| Printed Name: | Birdie Jones | | |
|---|---|---|---|
| Signature: | [signature] | Date: | 05/19/2020 |
| Typed By: | B. Jones | Date: | 05/19/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C.**

**Place an "X" in the appropriate box:**

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |





Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

Grievance No.: 2020-524-00324-6
2005252 Emergency

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Dwight Brown |
| NUMBER: | 91048151 | HOUSING ASSIGNMENT: | 7100 |

INFORMAL RESOLUTION ATTACHED (Not required for an emergency grievance)?  ☐ YES  ☐ NO

### GRIEVANCE CATEGORY (CIRCLE ONE):

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| (7.) Medical Services | 14. Intake | 21. Other |

STATE GRIEVANCE: (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

My rights have been violated by Windson Road and will remotely conspired in the ~~~~~

Requested Action: (Attach additional pages if necessary)

See Attachment

RECEIVED

MAY 26 2020

Grievance Coordinator

Inmate/Resident's Signature: Dwight B__     Date Submitted: _____

Page 1 of 2
03/07
White Copy: To Greivence Officer – Yellow Copy: To Inmate/ Resident File – Pink Copy: To Inmate/Resident

6rievance No.:   2020-504-00324-G                                    14-5B

**RESPONDING STAFF M EMBER'S REPORT:** (Attach additional pages if necessary. All pages must include the grievance number.)

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe. If you wish to reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:** (Attach additional pages if necessary. All pages must include the grievance number.)

Only the courts can determine release of inmates.

| Responding Staff Member's Printed Name: | D. Silenzio | Title | Asst. Shift Commander |
|---|---|---|---|
| Responding Staff Member's Signature: | | Date: | 05/27/2020 |
| Inmate/Resident's Signature (upon receipt): | | Date: | 5-28-20 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary. All pages must include the grievance number.)

I wanna Appeal because my rights are being violated

RECEIVED

MAY 29 2020

Grievance Coordinator

**WARDEN/ADMINISTRATOR'S DECISION:** (Attach additional pages if necessary. All pages must include the grievance number.)

we do not determine releases. That is a function of the courts.

Warden/Administrator's Signature: _____ Date: 6-3-2020

Inmate/Resident's Signature (upon receipt) _____ Date: _____

2020-504-00324-6

# <u>Grievance from</u>

A) Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to life long asthma diagnosis and condition.)**

and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

**3 As of March 11th, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide**

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,</u>

My curent conditions of confinement at Cibola County Corrections Center place me at great risk for COVID 19.

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at</u> **Cibola County**

MAY 25 2020

2020-50Y-00324-6

**Corrections Center to imminant danger and crul and unusual punishment**
**and violateing mine and all detainee's eighth amendment rights .**
**Also** 3 inmates have passed through **Cibola County Corrections Center** in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure**
**rooms it is not equiped with enough of them to handle a outbreak and surge of the novel**
**coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to**
**effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,**
**the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

**_Relief Requested_**
**That wardon Rosa forward this grievance to the US Marshall's and request**
**a judicial examination of the treatment of detainees and  totality of internal conditions at**
**Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 26

Grievance Coordinator

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | | Incident Number | |
|---|---|---|---|---|

| Incident Date | 05/26/2020 | | Incident Time (HRS) | unknown |
|---|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 26, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00324-G from Inmate/ Detainee Dwight Brown #80745051, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

| Did you receive any injuries? YES or NO (If YES, Explain Below) | NO |
|---|---|

| Were you evaluated by medical? YES or NO | NO |
|---|---|

| Printed Name: | Birdie Jones | | | |
|---|---|---|---|---|
| Signature: | | | Date: | 05/26/2020 |
| Typed By: | B. Jones | | Date: | 05/26/2020 |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C.**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

Page 1 of 1

2/26/1

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

Grievance No.: 2020-508-00318-G
2005199   Emergency

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Raul Trejo | | |
|---|---|---|---|
| NUMBER: | 31801-051 | HOUSING ASSIGNMENT: | TCC cell 204 |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☐ YES  ☑ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| 1. Facility Staff | 8. Dental Services | 15. Housing |
|---|---|---|
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Cibola County Corrections Center Warden and Staff are in direct

See Attachment

**Requested Action:** (Attach additional pages if necessary)

see Attachment

Inmate/Resident's Signature: _____   Date Submitted: _____

Page 1 of 2

03/07

**White Copy:** To Greivence Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

14-5B

6rievance No.:   2020-504-00318-G

**RESPONDING STAFF M EMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

**RESPONDING STAFF MEMBER'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

Only the courts can determine release of inmates.

| | | | |
|---|---|---|---|
| Responding Staff Member's Printed Name: | D. Silenzio | **Title** | **Asst. Shift Commander** |
| Responding Staff Member's Signature: | | **Date:** | **05/19/2020** |
| Inmate/Resident's Signature (upon receipt): | | **Date:** | 5-19-2020 |

**INMATE/RESIDENT APPEAL** (Attach additional pages if necessary.  All pages must include the grievance number.)

I would like to Appeal because my Rights are being violated

**WARDEN/ADMINISTRATOR'S DECISION:  (Attach additional pages if necessary.  All pages must include the grievance number.)**

We do not determine releases. That is a function of the courts.

RECEIVED

Warden/Administrator's Signature: _____   Date: 6-3-2020

Inmate/Resident's Signature (upon receipt) _____   Date: _____

03/07

2020-504-00318-6

# Grievance from

A) Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

**2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to ▓▓▓▓▓▓▓ diagnosis and condition.)** and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

3 As of March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes.

My curent conditions of confinement at Cibola County Corrections Center place me at great risk for COVID 19.

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at Cibola County

2030-504.00318-6

**<u>Corrections Center to imminant danger and crul and unusual punishment</u>**
**<u>and violateing mine and all detainee's eighth amendment rights .</u>**
**<u>Also</u>** 3 inmates have passed through **<u>Cibola County Corrections Center</u>** in the last 2 months and
tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge
outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates
have been denied testing which further violates cdc guiedance and the governors public health
emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other
inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn
statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr
(Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease
containment strategy. Beyond the known detrimental mental health effectsof solitary
confinement,isolation of people who are ill in solitary confinement results in decresed medical attention
and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective
way to prevent transmission of the virus through droplets to others because ,except in specialized
pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to
the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure**
**rooms it is not equiped with enough of them to handle a outbreak and surge of the novel**
**coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to**
**effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting,**
**the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the
rest of the facility and staff which further violates my 8th amendment.

### *<u>Relief Requested</u>*
**That wardon Rosa forward this grievance to the US Marshall's and request**
**a judicial examination of the treatment of detainees and  totality of internal conditions at**
**Cibola County Corrections Center  and release of all detainee's at high risk**

5-1C

# INCIDENT STATEMENT

| Facility | Cibola County Correctional Center | | Incident Number | |
|---|---|---|---|---|

| Incident Date | 05/19/2020 | | Incident Time (HRS) | unknown |
|---|---|---|---|---|

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| Housing Location (For Inmates/Residents Only) | |
|---|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 19, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00318-G from Inmate/ Detainee Raul Trejo #31801051, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

**Did you receive any injuries?  YES or NO  (If YES, Explain Below)** | NO

**Were you evaluated by medical?  YES or NO** | NO

| Printed Name: | Birdie Jones | | Date: | 05/19/2020 |
|---|---|---|---|---|
| Signature: | | | Date: | 05/19/2020 |
| Typed By: | B. Jones | | | |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

2/20

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

Grievance No.: 2020-524-00318  Emergency
2005176

14-5B

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Derrick R. Begay | | |
|---|---|---|---|
| NUMBER: | 1112151 | HOUSING ASSIGNMENT: | 700 C |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?   ☐ YES   ☑ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| | | |
|---|---|---|
| 1. Facility Staff | 8. Dental Services | 15. Housing |
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | 20. Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Cibola County Correction Center Warden asst Warden Chaun of c...
→ see attachment →

**Requested Action:** (Attach additional pages if necessary)

Request Action → see attachment

RECEIVE

MAY 18 2

Grievance Cen...

Inmate/Resident's Signature: Derrick R. Bng    Date Submitted: _____

03/07
**White Copy:** To Greivance Officer – **Yellow Copy:** To Inmate/ Resident File – **Pink Copy:** To Inmate/Resident

14-5B

6rievance No.:   2020-504-00310-G

## RESPONDING STAFF M EMBER'S REPORT: (Attach additional pages if necessary.  All pages must include the grievance number.)

This facility is taking the pandemic very seriously and is doing everything required to keep all inmates safe.  If you wish
To reach out to the USMS, you may do so through your attorney.

## RESPONDING STAFF MEMBER'S DECISION: (Attach additional pages if necessary.  All pages must include the grievance number.)

Only the courts can determine release of inmates.

| | | |
|---|---|---|
| Responding Staff Member's Printed Name: D. Silenzio | Title | Asst. Shift Commander |
| Responding Staff Member's Signature: | Date: | 05/18/2020 |
| Inmate/Resident's Signature (upon receipt): Derrick Robert Berry | Date: | 5/19/20 |

## INMATE/RESIDENT APPEAL (Attach additional pages if necessary.  All pages must include the grievance number.)

Want to Appeal ──→ Warden
wanna to Appeal to th Warty Because I dont
like the Decision.

RECEIVED

Grievance Coordinator

## WARDEN/ADMINISTRATOR'S DECISION: (Attach additional pages if necessary.  All pages must include the grievance number.)

We do not determine releases. This is a
function of the courts.

| | |
|---|---|
| Warden/Administrator's Signature: | Date: 6.3.2020 |
| Inmate/Resident's Signature (upon receipt): Derrick Robert Berry | Date: 5/19/20 |

Page 2 of 2

03/07

2020-504-00310-6

# Grievance from

A) Violation of my due process rights and violation of my eighth Amendment right to be free from crul and unusual punishment by Cibola County Corrections Centers chain of command Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, intentionally and deliberately while acting under the color of law violateing governor Lujan Grishim social distanceing order and public safety order's to keep all new mexicans safe the action exerted by Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes,are as follows.

1 by not reporting the number of confirmed covid 19 cases that have not pass through **Cibola County Corrections Center to CDC and the proper government & medical agencies.**

2 Exposeing my self (whome by being exposed to the novel coronavirus which causes covid 19 is at high risk due to ~~MY DIABETES~~ diagnosis and condition.)

and all detainee's at Cibola County Corrections Center. Creating a life threating situation for my self as well as other in Cibola County Corrections Center and high risk individuals in the community as well.

3 As of March 11ᵗʰ, 2020, the World Health Organization officially classified covid 19 as pandimic since then 1,340,643 americans have been infected and 80,239 have lost their lives due to this virus and 4,153,871 in the world have been infected resulting in 284,628 deaths world wide

Cibola County Corrections Center. Medical Director Don Douglas has intentionally lied by falsly informing the New Mexico Assistant Attorny Generals office that Cibola County Corrections Center medical unit is fully equiped to handle a covid 19 outbreak and has state of the art coronavirus equipment in order to ensure detainee's remain in custody at Cibola County Corrections Center. Mr. Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are fully aware That this purjuris statement is untrue and directly putting all detainee's at Cibola County Corrections Center in a life threating enviroment and situation while acting under color and code of state and federal law and thus violating my due process rights . Due to the fact that all pretrial detainee's who retain us citizenship are entitled to all due process rights provided by the constitution of the united states of america until convected of the crime being detained for. The CDC has issued guidance that individuals at higher risk of contracting COVID 19 adults over 60 years old and people with cronic medical conditions and respitory conditions such as lung disease heart disease asthma etc-take immediate preventive actions, including avoiding crowded areas and staying home as much as possible with confirmed cases in new mexico that indicate community spread we must take every necessary action to protect vulnerable population and the community at large. All of which has been habitualy violated by Don Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes.</u>

<u>My curent conditions of confinement at Cibola County Corrections Center place me at great risk for COVID 19.</u>

conditions of pretrial or presentence confinement create the ideal enviroment for transmission of contagious disease. By the actions exerted under color of state and federal law by Don <u>Douglas and Wardon Luis Rosa, Assistant Wardon John Jackson,Chief Of Security Morris Hayes, are deliberately,directly and knowingly exposeing my self and all detainee's at Cibola County</u>

RECEIVED

MAY 18 2020

2020-504-00310-6

<u>**Corrections Center to imminant danger and crul and unusual punishment**</u>
<u>**and violateing mine and all detainee's eighth amendment rights .**</u>

<u>Also</u>  3 inmates have passed through  <u>**Cibola County Corrections Center**</u> in the last 2 months and tested positive for Covid 19 2 whome remain in custody and who will enevitible create a surge outbreak in cccc thus
exposeing the whole facility and my self and other inmates. I and other inmates have been denied testing which further violates cdc guiedance and the governors public health emergency orders and  pretiral and presentence due process  constituteing  a violation of  my and other inmates eighth amendment rights to be free of crul and unusual punishment.

According to Dr. Jaimie meyer an Assistant Professor of medicine at Yale  whome testified in a sworn statement to the court and under penalty of  purjury, in Frank Sanville, Docket No. 2630-318 Wrcr (Vermont) on April 21,2020 Mere "disciplinary or solitary confinement is not an effective disease containment strategy. Beyond the known detrimental mental health effectsof solitary confinement,isolation of people who are ill in solitary confinement results in decresed medical attention and increased risk of death. Isolation of people who are ill using solitary confinement is also ineffective way to prevent transmission of the virus through droplets to others because ,except in specialized pressure rooms (rarely in medical units if avialable at all), air continues to flow outward from rooms to the rest of the facility. Risk is thus increased to other people in prison and staff "

although **Cibola County Corrections Center is equiped with 2 or 3 of these so called pressure rooms it is not equiped with enough of them to handle a outbreak and surge of the novel coronavirus that causes COVID 19 nor is Cibola County Corrections Center  equiped to effectively and efficiently  prevent and protect detainee's from contracting, and or transmitting, the virus or handleing or containing a out break**
also cccc is not taking preventive measures to test all inmates place in corintine to prevent spread to the rest of the facility and staff which further violates my 8th amendment.

<u>***Relief Requested***</u>
·· **That wardon Rosa forward this grievance to the US Marshall's and request a judicial examination of the treatment of detainees and  totality of internal conditions at Cibola County Corrections Center  and release of all detainee's at high risk**

RECEIVED

MAY 18 2020

Grievance ○○○

5-1C

# INCIDENT STATEMENT

| **Facility** | Cibola County Correctional Center | **Incident Number** | |
|---|---|---|---|

| **Incident Date** | 05/18/2020 | **Incident Time (HRS)** | unknown |
|---|---|---|---|

| **Person Name** | **ID Number** (Employee #/Inmate #/Civilian ID) | **Person Type** (Employee/Inmate/Civilian) | **Person Role** (Witness or Participant) |
|---|---|---|---|
| Birdie Jones | 1824204 | Employee | Participant |

| **Housing Location (For Inmates/Residents Only)** |
|---|

**Based on your own knowledge, what did you see, hear, and do?**

Today, May 18, 2020, I, Grievance Coordinator Birdie Jones, received Grievance #2020-504-00310-G from Inmate/ Detainee Derrick Begay #11126151, which he has designated as an emergency grievance. This grievance is about his concerns that the COVID-19 virus has arrived inside our facility. While the virus is very serious and would be considered an emergency if this inmate had actually ben exposed to it, there is no reason to believe that he has been exposed; and this grievance has been identified as non-emergency.

**Did you receive any injuries? YES or NO  (If YES, Explain Below)**  NO

**Were you evaluated by medical? YES or NO**  NO

| **Printed Name:** | Birdie Jones | **Date:** | 05/18/2020 |
|---|---|---|---|
| **Signature:** | | **Date:** | 05/18/2020 |
| **Typed By:** | B. Jones | | |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C | |
|---|---|---|
| | Civilian/Other refused to complete this 5-1C | |

| **Employee/Witness Printed Name** | | **Date:** | |
|---|---|---|---|
| **Employee/Witness Signature** | | | |

| **Employee/Witness Printed Name** | | **Date:** | |
|---|---|---|---|
| **Employee/Witness Signature** | | | |

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

DAVID GREAT HOUSE

ISM# 06216-151

CIBOLA COUNTY CORRECTION CENTRE

PO BOX 3540

Milan New Mexico 87021

UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

Label 400  Jan. 2013
7690-16-000-7948

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE ®

For Domestic Use Only

Label 107R, July 2013

★ TRACKED ★
★ INSURED ★

Legal Mail

US District court clerk
For Albuquerque New Mexico
333 Lomas Blvd
NW # 270
AIB NM 87102

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE NEW MEXICO

JUN - 8 2020

MITCHELL R. ELFERS
CLERK

ZIP 87021
02 4W
0003063673 JU


Item# 43568
Patent Pending
CLEARWATER

Legal Mail

Legal Mail